INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v. JAMES. VANLANDINGHAM.

Decided February 1, 1905.

**1.—Railways—Negligence—Car on Main Line.**

It was negligence on the part of a railway to permit freight cars to stand on its main line in a gravel pit without sending out a flagman or providing other means of giving warning of danger to approaching trains, and plaintiff, an engineer, who · without ·contributory negligence on his part ran his locomotive into the cars could recover for injuries received thereby,

**2.—Harmless Error—Undisputed Fact—Failure to Charge Existence of.**

If defendant considered the evidence such as to indisputably show that there was a bulletin on the board at the station notifying freight engineers to bring their trains to a full stop at a certain gravel pit, where the collision occurred, and not to proceed until they saw that the track was clear, it should have requested a charge instructing that there was such a bulletin, and can not complain on appeal of the court's failure to do so, the main charge containing no affirmative error.

**3.—Charge—Duty of Servant to Examine Bulletin Board—Surrounding Circumstances.**

The court was justified in not assuming that it was the duty of plaintiff to examine the bulletin board and in instructing the jury to inquire whether "under all the facts and circumstances in evidence" it was the duty of plaintiff to examine the bulletin board, it appearing from the evidence that plaintiff had been taken off his regular division and put on one with which he was unfamiliar, that no time card was given him, as should have been done, and that when he reached the station where he should have received orders he searched for a bulletin board but found none.

**4.—Same—Same.**

It was not error to instruct the jury that in order to find for defendant they must find that if plaintiff had examined the bulletin board he would have been notified not to proceed until he saw that everything was clear, since plaintiff was a stranger to the road and had no time card furnished him, and if he had read that all freight trains will come to a full stop where the steam shovel is working, three and a half miles north of H. it would have given him no information as he did not know where H. was.

**5.—Contributory Negligence—Failure to Examine Bulletins—Question of Fact.**

It appearing from the evidence that train order bulletins at a station were kept in "clips" behind a door, that there were a great number of them in the clips with no system of arrangement, that plaintiff was a new engineer on that division and had had no time card furnished him and had not been told that there would probably be cars on the main line at a certain gravel

pit, the question whether plaintiff was guilty of contributory negligence in not examining the bulletins was one for the jury.

### 6.—Same—Charge—Surrounding Circumstances.

There is nothing misleading or confusing in a charge instructing the jury to consider and look to. all the surrounding facts and circumstances in evidence and from them determine whether or not plaintiff acted as a person of ordinary prudence would have acted under the same or similar circumstances.

### 7.—Rules of Court—Brief—Assignment of Error.

The statement under a proposition should contain the charge of which complaint is made, or the substance thereof, and a reference to the record for verification; a reference to the record alone is not sufficient.

### 8.—Habitual Disregard of Rule—Requested Charge on Issue not Raised.

The court properly refused a special charge embodying the proposition that an employe is not justified in disobeying a rule unless other employes habitually disobey it, plaintiff's contention being that no such bulletin was brought to his notice, not that he had the right to disregard the rule as to reading bulletins because other engineers did so.

### 9.—Improper Admission of Evidence—Withdrawal by Charge.

Where plaintiff, an engineer running on a new division, did not rely, as ground for recovery, upon the failure of one on the engine as a pilot to notify him that the train was approaching a gravel pit where cars were liable to be on the main line, evidence on this subject might have been excluded if defendant had objected to its admission, but not having done so, it was not entitled to have the evidence withdrawn by a charge instructing the jury not to consider the negligence, if any, of the pilot in not warning plaintiff of the danger.

### 10.—Verdict—Damages for Personal Injuries.

A verdict of $25,000 held not excessive as compensation for injuries to a man thirty-eight years old and earning from $140 to $160 per month, the injuries affecting his eyesight, heart, kidneys and bladder, causing intense suffering and loss of weight and necessitating the use of crutches in walking.

ON MOTION FOR REHEARING.

### 11.—Province of Jury—Question of Fact.

It is the province of the jury to pass upon the credibility of witnesses and the Appellate Court will not interfere with their disposition of a controverted issue of fact.

### 12.—Train Order Bulletins—Duty of Employes to Read.

Employes of a railroad can not be held responsible for not reading train order bulletins where they were not placed where they could be seen.

### 13.—Negligence.

The stopping of a work train on the main line without sending back a flagman, the failure to have train order bulletins where they could be seen and in systematic order, the failure to give plaintiff, a new engineer on that division, orders conveying knowledge of what the bulletins contained and the failure to warn him of a particular obstruction on the tracks, were all acts in violation of rules of the railway and negligence.

Appeal from the District Court of Bexar. Tried below before Hon. J. L. Camp.

*Hicks & Hicks,* for appellant.—1. It is error for the court to submit for determination by the jury a fact upon which there is no conflict in

the evidence and which is established by the uncontradicted evidence in the case. Texas & P. Ry. Co. v. Moore, 27 S. W. Rep., 962; Western Union Tel. Co. v. Burgess, 60 S. W. Rep., 1023; Herndon v. Vick, 45 S. W. Rep., 852; Fayssoux v. Kendall County, 55 S. W. Rep., 583; Bailey v. Mickle, 45 S. W. Rep., 949; International & G. N. Ry. Co. v. Stewart, 57 Texas, 166.

2. The court erred in giving to the jury the following paragraph of its main charge, to-wit: "and if you further believe from the evidence that such failure to examine the bulletin board was, under all the facts and circumstances in evidence before you, negligence," in that there are no facts or circumstances in evidence relieving said plaintiff of the duty to examine said bulletin board, and no facts authorizing the giving of said portion of said main charge. San Antonio & A. P. Ry. Co. v. Wallace, 76 Texas, 639; Louisville & N. Ry. v. Wilson, 12 S. W. Rep., 720; Schaub v. Hannibal & St. Joe Ry., 16 S. W. Rep., 924; East Tennessee, V. & G. Ry. v. Kane, 22 L. Rep. Ann., 316; Elliott v. Railway, 150 U. S., 245; Railway Co. v. Brown, 95 Texas, 2.

*Perry J. Lewis* and *H. C. Carter,* for appellee.—It is true that the verdict is large, but that is not the criterion by which to test its excessiveness. To that suggestion we answer that the damages are large, and, unless the court simply considers the size of the verdict, and refuses to consider the evidence going to show the extent of the damages, the verdict can not be held excessive. The testimony shows that prior to his injuries, Vanlandingham was a splendid physical specimen, tall, well proportioned and weighing 220 pounds. From this admirable condition he has been brought down to a weight of 147 pounds. It is probable that a man in a more pitiable condition was never brought into the courthouse. His condition was such that his friends could not recognize him. Defendant's witness, Honey, testified: "I know him personally. I don't know that I have seen the plaintiff yet." Being told to look around the court room and see if he can find the plaintiff, he answered: "No, I don't recognize him. That man (indicating plaintiff) don't look like the Vanlandingham whom I knew." Dr. Hines caused plaintiff to attempt to walk before the jury, and they beheld his pitiful condition and his method of trying to walk. For eight days this wretched man sat before the jury and they had an absolute ocular demonstration of his terrible condition. The plaintiff was a living witness before the jury; his dumb afflictions spoke louder and more truly than words. The jury saw what this court can not see, and, therefore, were in a position to more accurately estimate the plaintiff's real condition. The jury having had so much more evidence before it than this court has, how can this court logically hold, as a matter of law, that they were governed by passion and prejudice in rendering their verdict? It has often been held that what the jury see, and what is illustrated to them at the trial, is as much a part of the evidence as that which is spoken by witnesses. 12 Am. and Eng. Ency. of Law, p. 367.

FLY, ASSOCIATE JUSTICE.—This is an appeal from a judgment for $25,000 obtained by appellee against appellant, it being alleged in the petitions that appellee had received personal injuries through the negli-

gence of appellant in permitting a number of cars to stand on its main line, over which appellee, as engineer, was running a train, and in not having a flagman out to warn him of the situation of the cars, or in some way notify him of the danger, and through such negligence appellee ran his locomotive into the cars and was injured.

We find that appellant was guilty of negligence in having freight cars on its main line in a gravel pit near Hallsburg, and in not protecting the train on which appellee was engineer by sending out a flagman, or in some way notifying appellee that the cars were on the track. That, through such negligence, the locomotive, under charge of appellee, ran into the cars and seriously and permanently injured him. We find that he was not guilty of contributory negligence.

There is no merit in the first assignment of error. The complaint is that the court did not instruct the jury that there was a bulletin on the board at Marlin notifying engineers in charge of freight trains to bring their trains to a full stop where the steam shovel was working, three and a half miles north of Hallsburg, and not to proceed until they saw that the track was clear. This question was fully passed upon by this court in the case of Galveston, H. & S. A. Ry. Co. v. Pendleton (30 Texas Civ. App., 431, 70 S. W. Rep., 996), and it was held: "There is no affirmative error in the charge; it merely failed to withdraw a fact from the jury which appellant claims was established as a matter of law. If appellant deemed that the evidence was such as warranted its withdrawal, as an issue of fact, from the jury, it should have, by a special charge, requested the court to do so. Having failed to do this, the main charge being a correct enunciation of the law, it is in no attitude to complain." Appellant asked no special charge giving its view of the testimony, and is, therefore, in no position to complain. The evidence also raises a doubt as to whether there was a bulletin board at Marlin, and as to the existence of any bulletin of the purport claimed by appellant.

The second assignment of error attacks the charge of the court because the court did not assume that it was the duty of appellee to examine the bulletin board, and because it led the jury to believe that there might be "facts and circumstances" in evidence before the jury that would exonerate appellee from examining the board. What has been said in connection with the first assignment of error applies with equal force to this. The facts in the case show that appellee had been taken from his regular division and sent out on a run on a division of the railroad with which he was not acquainted; that no time-card was given him, as should have been done, and that when he reached Marlin, after midnight, he searched the room for a bulletin board, and found none. There was testimony tending to show that when an engineer was sent over a part of the railroad with which he was not acquainted, that orders should be given informing him of his duties. The court did not err, therefore, in instructing the jury to inquire as to whether, "under all the facts and circumstances in evidence," it was the duty of appellee to examine the bulletin board.

It was not error to instruct the jury that, in order to find for appellant, they must find that if appellee had examined the bulletin board he would have been notified not to proceed until he saw that everything was clear.

Vol. XXXVIII. Civil—14.

Appellee was a stranger to the road, and had no time-card furnished him, and if he had read that "all freight trains will come to a full stop where the steam shovel is working, three and a half miles north of Hallsburg," it would have given him no information as to where he ought to stop. He knew nothing of where Hallsburg was, and notice to stop three and a half miles from Hallsburg could convey no information to him.

It was in evidence that bulletins at Marlin were kept in clips, and that there were a great number of them in the clips, and that no system was used in arranging them, and it was therefore not error to submit to the jury as to whether it was negligence on the part of appellee not to examine the bulletins.

The fifth assignment of error is obscure as to the ground on which it attacks the charge, and it is not followed by any proposition elucidating it. It should not be considered. We will say, however, that the charge was not affirmatively wrong in charging that more should be found by the jury than was necessary to justify a verdict for appellant. Appellant asked no special charges restricting the charge of the court. (Gulf, C. & S. F. Ry. Co. v. Hill, 95 Texas, 629.)

There is nothing "misleading or confusing," as contended through propositions under the sixth assignment of error, in the charge of the court which instructed the jury "to consider and look at all the surrounding facts and circumstances in evidence before you, and from them determine whether or not the plaintiff acted as a person of ordinary prudence would have acted under the same or similar circumstances." There was no other way to determine whether appellee was guilty of contributory negligence except by a consideration of the facts and circumstances in evidence, and surely to so tell the jury could not have misled or confused them. It is admitted that the charge states a correct proposition of law, and, if appellant desired any elucidation of it, a special charge should have been asked.

The seventh assignment of error complains of the refusal to give a certain special charge, but what it is does not appear in the brief, but this court is referred to a certain page of the transcript for the special charge. This is a failure to comply with the plain requirements of the rule, and it is not incumbent on this court to search the record to ascertain what the charge was that appellant desired given. The statement under a proposition should contain the charge of which complaint is made, or the substance of it, and a reference to the record for verification. A reference to the transcript merely is not sufficient. (Johnson v. Lyford, 9 Texas Civ. App., 90, 29 S. W. Rep., 57; Laing v. Hanson, 36 S. W. Rep., 116.) However, it may be said that the question of the rapid rate of speed at which appellee was running his train when the collision took place is fully presented in the general charge, and it was not error to refuse a special charge on the same subject.

This court is asked, through the ninth assignment, to hold that the trial court erred in not giving a special charge embodying the proposition that an employe is not justified in disobeying a rule unless other employes habitually disregard it. It was not claimed by appellee that he had the right to violate the rule as to reading the bulletins at stations because other engineers violated it, but his contention was that no such bulletin was brought to his notice, although he looked for it at Marlin.

The court assumed in the charge that the rule as to engineers reading bulletins at starting points, as well as intermediate stations, was in effect. Appellant asserts that there was no evidence that the rule did not exist, or that it was habitually violated, and yet the complaint is made that an issue not supported by the fact was withheld from the jury. There is no force in the contention that the issue had already been submitted by the court to the jury. No such issue was submitted.

Appellant requested the following charge, which was refused: "You are instructed that plaintiff does not charge defendant with negligence upon the ground, if any, that the brakeman, George Noble, failed to notify him of the location of the gravel pit, and you can not find defendant liable upon such ground, if any, even if you should find that Noble should have notified, or sooner notified plaintiff of the location of the pit." Appellant states in its brief that appellee did not rely upon the failure of Noble, who was on the engine as a pilot, to notify him that the train was approaching the gravel pit, and yet the attempt is made to withdraw an issue not made by the special charge. If such issue was not raised by the pleadings, evidence on the subject would doubtless have been excluded if appellant had interposed an objection. It did not do so, but sought to eliminate it by a charge. However, we think the evidence was admissible under the pleading on the question of contributory negligence, if on no other, and that the charge was properly refused.

The testimony indicates that no board for bulletins was kept in Marlin, where it is contended appellee should have read the bulletin as to stopping at the gravel pit, but that the bulletins were held in what are called "clips," and that they were placed behind a door. They were movable, and likely to be found at different places. Several of the employes of appellant had never seen the bulletin as to the gravel pit, nor even heard of it. Appellee was a new hand on that division of the road and knew nothing of the bulletin. He searched for the bulletin board but could not find it. He had not been furnished a time-card. Although a new hand, and known by the employes of appellant at Marlin to be so, the bulletin was not shown him, and he was not told that cars would probably be on the main track at a gravel pit near Hallsburg. His conductor did not mention it to him, nor did Noble, who was riding on the engine with him as a pilot. The question as to whether appellee was guilty of contributory negligence was not one of law, but one of fact, to be determined by the jury. The facts were sufficient upon which to base a finding that appellee was not guilty of contributory negligence.

The facts show that before the injury appellee was a strong and healthy man, weighing two hundred and twenty-five pounds, and that afterwards he was a physical wreck weighing only one hundred and forty-seven pounds. His sufferings were intense, and up to the time of the trial he could not sleep in a reclining position. His eyesight is greatly impaired and he can not walk without crutches. His spine is injured, and his heart, kidneys and bladder are badly affected. When hurt appellee was thirty-eight years old, and was earning from $140 to $160 a month. While the verdict for $25,000 is a large one, we do not think, under the facts of this case, that it is excessive.

*Affirmed.*

The judgment is affirmed.

ON MOTION FOR REHEARING.

Appellant insists that the record does not show that appellee did not have a time-card. Appellee swore: "I had no time-table at all. Time-table number 20 went into effect on the 14th day of September, 1902, a couple of days before the accident happened. I did not receive and receipt for time-table number 20 at Lewis. I asked the operator for a time-table at Lewis, and he said he only had one, and he had none to give away, and I informed him that I had no time-card. It was just like running in the dark. . . . I pulled out of Marlin without any time-card. I asked for a time-card at Marlin and the dispatcher told me they were all locked up." The time-card received at Mart was one that had been superseded by time-card number 20. But appellant contends that this court should reject that testimony and take the evidence of its witness to the effect that appellee did have the time-card. This court is in no position, if it had the authority, to pass upon the credibility of witnesses; that was the peculiar province of the jury, which saw proper to credit the testimony of appellee's witnesses rather than that of the witnesses for appellant.

In regard to the bulletin board at Marlin, appellee swore: "There were no bulletins in my sight. . . . I searched the room." Others swore that they never saw the bulletin in question until after the wreck. It would not matter how many rules appellant may have had requiring its employes to read bulletins, still, if it did not place its bulletins where the employes could see them, they should not be held responsible for not reading them. The orders or bulletins of appellant can not be made, like the laws of Caligula, binding, although concealed, so that they could not be scrutinized. The evidence raised a question as to whether there was any bulletin board at Marlin, and the court very properly did not assume the existence of one at that place.

Under the requirements of a rule of appellant, no train should be stopped on the main line except a regular passenger train, without a flagman being sent back at once. That rule was totally disregarded by the work train into which appellee ran the locomotive, on which he was the engineer, and at a place where there was a curve in the railroad.

It was in proof that bulletins had been accumulating in the clips at Marlin for several months, and Hume, a division superintendent, swore that it was customary to put new bulletins on last, or, as we understand it, on top. It was also in evidence that there was a rule requiring dispatchers to give new men on the road orders conveying knowledge of what is in the bulletin, and that where there is an obstruction on the track a train order should be given telling him to guard against the particular obstruction. These rules were disregarded in the case of appellee.

Every issue made by the pleadings and evidence was fairly submitted by the court to the jury, and the only complaints urged with any degree of seeming confidence are, that the court did not assume that appellant had proved certain matters, on the ground that those matters were uncontroverted. None of them was uncontroverted.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.