## BANCROFT v. SAN FRANCISCO TOOL CO.*

### S. F. No. 484; January 27, 1897.

#### 47 Pac. 684.

**Contract to Make Passenger Elevator.—A Warranty in a Written** contract to manufacture and put up a passenger elevator, that the contractor would furnish first-class work, and keep the elevator

---

*For subsequent opinion in bank, see 120 Cal. 228, 52 Pac. 496.

in repair for one year, does not include a warranty that the design submitted with the specifications would be suitable.

**Contract to Make Passenger Elevator.**—The Implied Warranty created by Civil Code, section 1770, which provides that one who manufactures an article under an order for a particular purpose warrants that it is reasonably fit for such purpose, forms a part of a written contract to manufacture and put up a passenger elevator, so that an action for breach thereof is one on a written contract (Code Civ. Proc., sec. 337), for breach of which action may be brought within four years.

**Contract to Make Passenger Elevator.**—A Cause of Action for a Breach of warranty that the design of a passenger elevator would be suitable for the purpose for which it was intended accrues when the elevator is completed.

APPEAL from Superior Court, City and County of San Francisco; Charles W. Slack, Judge.

Action by H. H. Bancroft against the San Francisco Tool Company. There was a judgment for defendant for costs, and from an order denying a new trial plaintiff appeals.

Galpin & Zeigler for appellant; E. J. Pringle for respondent.

SEARLS, C.—This is an action to recover damages from the corporation defendant, alleged to have been sustained by plaintiff by reason of the fall of a passenger elevator erected by said defendant for plaintiff in the History Building, Market street, San Francisco. Defendant, among other defenses to the action, set up the bar of the statute of limitations as found in subdivision 1 of section 339 of the Code of Civil Procedure, which provides that "an action upon a contract, obligation or liability, not founded on instrument in writing, or founded upon an instrument of writing executed out of this state," shall be brought within two years. At the trial, and upon the close of plaintiff's testimony, defendant moved the court for a nonsuit, which motion was granted, and judgment entered in favor of defendant for costs. This appeal is from an order of the court denying a motion on behalf of plaintiff for a new trial.

Whether or not plaintiff's cause of action is barred by the statute of limitations is the only question necessary to be considered on this appeal. Some minor questions were made

at the trial, none of which, however, have any bearing upon the main point, viz., the bar of the statute; and, manifestly, if the cause of action was barred, the nonsuit was properly granted, while, if not so barred, the nonsuit was clearly erroneous, and a new trial should have been granted. It appears from the record that early in 1887 the plaintiff was engaged in the construction of what is known as the "History Building," on Market street, San Francisco—a building consisting of five stories and a basement; that he required three elevators therein, viz., two freight and one passenger elevator. On the fourth day of April, 1887, the defendant corporation submitted to plaintiff a proposition in writing, which is in part as follows:

"San Francisco, April 4, 1887.

"A. L. Bancroft & Co., City:

"We will furnish three hydraulic elevators as follows, and as per plan submitted with this specification.

"Elevators: Three hydraulic cylinders complete, with elevating sheaves mounted on same as shown on plan.

"Details of erection: 1,300 feet of ⅝-inch wire rope."

Then follows a long list of materials to be furnished, consisting of iron sheaves, shafting, counterweights, watergates, casing, elbows, cast-iron tees, flanges, sewer-pipe, steam pump, tank, cages, "one cage to be made for carrying passengers," etc., which need not be mentioned in greater detail. The offer proceeds as follows: "We will furnish the work heretofore mentioned in a first-class, workmanlike manner for the sum of five thousand dollars ($5,000), guaranteeing these elevators for one year; that is to say, we will keep them in first-class order for one year, free of charge to you. Payments to be made as follows: On completion of the two freight elevators we to receive two thousand dollars, and on the completion of passenger elevator we to receive fifteen hundred dollars, and after thirty days' satisfactory running we to receive balance due on contract." The proposition was accepted by plaintiff on or before April 6, 1887, except that by mutual agreement the payments were to be made in monthly sums of $500 each, the first payment of $500 being made by plaintiff on said April 6, 1887. The elevators were constructed by defendant, and the final payment on account thereof was made February 15, 1888. It is not quite clear from the testimony when the elevators were completed.

Plaintiff, in his amended complaint avers that in February, 1888, all of said elevators had been erected in said building, except that various parts thereof were, as plaintiff is informed and believes, altered by the defendant from time to time, and were not in good running order down to August, 1888, and "that in said month said plaintiff accepted said elevators." Defendant, in his answer to the amended complaint, avers that the elevators were completed July 1, 1887, and kept by it in first-class order until July 1, 1888. Plaintiff, in his testimony, admits that the passenger elevator started to run about July, 1887, but says it would run a while and then stop for repairs and alterations, etc. It ran that way, he says, for two or three months, one of his (plaintiff's) employees running it. We may assume, for the purposes of the case, that it was finally accepted by plaintiff in August, 1888, as stated in the complaint. The passenger elevator fell September 19, 1888, causing the damage complained of. This action was commenced September 18, 1890, more than two years after the work was accepted, and within two years after the injury occasioned by the fall of the elevator. The testimony tended to show that the drum over which the cables ran was fifteen inches in diameter, and the wire cable running over it was five-eighths of an inch in diameter; that, in order to be safe, the drum should be at least sixty times the diameter of the cable, or, in the present instance, should be thirty-seven and one-half inches in diameter, etc. We may, for the sake of brevity, discard all scientific terms, and say the evidence tended to show a faulty design in the machinery, and that by reason thereof, and not in consequence of bad workmanship, the cable or cables were overtaxed. That the wire ropes should not have been taxed over one-sixth of their breaking resistance, the coefficient of safety in a passenger elevator being six, while in the present instance it was only about two; and that, by reason of being overtaxed, the cables soon gave out, and the accident occurred.

1. The only language used in the proposition or offer of the defendant which is or can be construed into a warranty is hereinbefore set out, and we repeat it: "We will furnish the work heretofore mentioned in a first-class, workmanlike manner for the sum of $5,000, guaranteeing these elevators for one year; that is to say, we will keep them in

first-class order for one year free of charge to you." This language only exhibits an intent to warrant the character or quality of the work to be performed upon the elevator, and cannot, by any fair canon of interpretation, be extended so as to include the suitableness of the design. The plan or design of the elevators was submitted with the specifications. The offer was to "furnish three hydraulic elevators as follows, and as per plan submitted within this specification." According to this plan, the materials were to be furnished and the work performed "in a first-class, workmanlike manner." There is no warranty of the plan or design in the language used. As was said by the court below in granting the nonsuit: "First-class materials and workmanship may be furnished on a poor design or device, as well as on a good one." No particular form of words is necessary to constitute an express warranty. If it appears from the language used that an intent to warrant exists, and is relied upon, it is sufficient. Indeed, some of the authorities go so far as to hold that the positive affirmation of a material fact by the vendor, which is relied upon by the vendee, will be treated as a warranty, regardless of the actual intent of the vendor. This last position is, however, not supported by the weight of authority. Where, as in the present instance, the contract is in writing, we cannot go beyond the instrument to formulate an express warranty, since the written instrument is conclusively supposed to embody the whole contract: Lamb v. Crafts, 12 Met. (Mass.) 353; Reed v. Wood, 9 Vt. 286; Boardman v. Spooner, 13 Allen (Mass.), 353, 90 Am. Dec. 196; Dean v. Mason, 4 Conn. 432, 10 Am. Dec. 162; Benjamin on Sales, 6th ed., p. 625, and cases there cited; Johnson v. Powers, 65 Cal. 179, 3 Pac. 625. As the contract contains no language importing a warranty of the plan or design of the passenger elevator, and as the evidence shows that it was such design that was faulty, and caused the injury to plaintiff, defendant was not liable as and for an express warranty.

2. Independent of express contractual specifications, the law implies certain warranties in given cases. In this state a contract of sale or agreement to sell does not imply a warranty, except as provided in the Civil Code (section 1764). Section 1770 of the same code is as follows: "One who manufactures an article under an order for a particular purpose

warrants by the sale that it is reasonably fit for that purpose." This section applies to the case in hand, and the only question involved is this: Does the implied warranty of the statute become a part of the written contract, so as to enable plaintiff to maintain an action for a breach thereof within four years, or does it constitute an obligation or liability, not founded, upon an instrument in writing, upon which an action must be brought within two years, as provided by subdivision 1 of section 339 of the Code of Civil Procedure? The contention of appellant is "that the warranty implied by law, that the elevator was reasonably fit for the purpose of carrying passengers, is a part of the written contract," and hence, of course, that the limitation of four years applies, as in case of written contracts. In other words, the contention is that what is by the law implied in an express contract is as much a part of it as what is expressed. Implied warranties are created by law, or spring from the facts existing at the time of sale. We think this contention is founded upon a firm basis. "What is implied in a contract is as much a part of it as what is expressed": 1 Beach on Modern Contracts, sec. 710; Jones v. Turner, 80 Hun, 157, 30 N. Y. Supp. 65. Thus, A contracts for the sale of goods to B, and no time is provided for delivery. The law adds that delivery must be made within a reasonable time. To put it in the form of a syllogism as in pleading, the law becomes the major premise, the contract the minor premise, and from these the conclusion flows. Thus, one who manufactures an article under an order for a particular purpose warrants by the sale that it is reasonably fit for that purpose. The defendant manufactured for plaintiff, under an agreement in writing, an elevator, to be used in the conduct of passengers, which was not reasonably fit for that purpose. The conclusion is that there was a breach of the warranty for which defendant is liable. The law did not make a new or separate contract between the parties, but attached the legal obligation of a warranty to that which they made. The obligation attaches to and becomes an integral part of the contract, which is discharged upon the fulfillment of the latter, and which exists in all its rigor upon a breach of such a contract, and is only barred by time upon the expiration of the four years prescribed by section 337 of the Code of Civil Procedure, as the limita-

tion for commencing actions on contracts in writing. The breach of the warranty is based upon the erroneous design of the passenger elevator, and such breach occurred when the elevator was completed: Wood on Limitations, p. 394; Lattin v. Gillette, 95 Cal. 317, 29 Am. St. Rep. 115, 30 Pac. 545, and cases there cited; Byrum v. Agricultural Works, 91 Cal. 657, 27 Pac. 1093. In case of the warranty of title of personal property sold the rule is different. There there is no breach until the possession of the purchaser is disturbed by the true owner: Gross v. Kierski, 41 Cal. 111. As four years had not elapsed between the completion of the contract and the date of suit brought, the cause was not barred, and we recommend that the order of the court below denying plaintiff's motion for a new trial be reversed and a new trial ordered.

We concur: Britt, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order of the court below denying plaintiff's motion for a new trial is reversed and a new trial ordered.