FREDERICO DE HOYES v. GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY.

Decided December 9, 1908.

**1.—New Trial—Newly Discovered Testimony—Diligence.**

When a party goes into a trial without any effort to postpone the same for the purpose of obtaining the testimony of important witnesses of whose whereabouts and testimony he is informed, he is not entitled to a new trial, in the event of a verdict against him, for the purpose of obtaining said testimony. The same rule applies when the existence of important but absent testimony is developed during the progress of the trial. Parties will not be allowed to speculate upon obtaining a verdict with the evidence at hand, and complain afterwards if the verdict is against them.

**2.—Brief—Multifarious Proposition.**

The following proposition in a brief held, multifarious and therefore not entitled to consideration on appeal, viz.: "Because the officer taking the deposition was guilty of improper conduct in using memoranda in taking said deposition, and the said witness having failed to answer fully or having evaded answering certain material cross-interrogatories, the deposition should have been suppressed."

**3.—Charge—Verdict—Immaterial Error.**

An error in the charge in submitting a certain issue becomes harmless when

it is evident that the verdict of the jury was not based upon any finding upon such issue.

### 4.—Appeal—Brief—Rules.

When an assignment of error is not a proposition in itself and is not followed by a proposition in appellant's brief it will not be considered on appeal.

### 5.—Evidence—Answer not Responsive to Question.

An answer not responsive to the question asked is properly excluded.

### 6.—Evidence—Hypothetical Question.

When a hypothetical question does not sufficiently or fairly embody the facts of a case, the exclusion of the answer of the witness is not error.

### 7.—Charge—Evidence without Pleading.

It is not error for the trial court to instruct the jury to find for the defendant on an issue made by the evidence but not by plaintiff's pleading.

Appeal from the 57th Judicial District, Bexar County. Tried below before Hon. A. W. Seeligson.

*J. D. Childs,* for appellant.—The court erred in overruling plaintiff's amended motion for a new trial wherein a new trial is asked on account of the newly discovered evidence of Marshall Norris, Jose Tamayo and Martin Hernandez. Wolf v. Mahan, 57 Texas, 171; Texas & P. Ry. Co. v. Barron, 78 Texas, 421; Standard Insurance Co. v. Askew, 11 Texas Ct. App., 59; Houston & T. C. Ry. Co. v. Forsyth, 49 Texas, 171.

On the merits of the whole case we beg leave to cite: Missouri, K. & T. Ry. Co. v. Scarborough, 68 S. W., 196; Gulf, C. & S. F. Ry. v. Wood, 63 S. W., 164; Houston & T. C. Ry. v. Gee, 66 S. W., 78; Chesapeake & O. Ry. v. Davis, 58 S. W., 698; Shearman and Redfield on Negligence, sec. 458.

Third Assignment. The court erred in paragraph 6 of the general charge, which is as follows:

"If you find for the defendant on the issue of release, you will so say by your verdict, using a form substantially as follows:

'We, the jury, find in favor of the defendant on the issue of the release.'

Or, if you find for the defendant on the general issue, you will say, using a form substantially as follows:

'We, the jury, find in favor of the defendant on the general issue.'

Or, if you find for the defendant on the issue of the release, but not on the general issue, you will so say, using a form substantially as follows:

'We, the jury, find in favor of the defendant on the issue of the release, but not on the general issue.'

Or, if you find for the defendant on the general issue, but not on the issue of the release, you will so say, using a form substantially as follows:

'We, the jury, find in favor of the defendant on the general issue, but not on the issue of the release.'

Or, if you find for the defendant under both issues, you will say, using a form substantially as follows:

'We, the jury, find in favor of the defendant on the issue of the release and also the general issue.' "

This instruction was confusing. It was an improper blending of issues and was calculated to mislead the jury. Besides, the plaintiff was entitled to have a clear cut submission of the issues. Gulf, C. & S. F. Ry. v. Harriett, 80 Texas, 81; Cushman v. Masterson, 64 S. W., 1031-1033.

Seventh Assignment. The court erred in permitting W. B. Ware, a witness for defendant, over objections of plaintiff, to testify concerning the said release and the manner in which it was procured and leading up to it, and concerning statements and transactions in relation thereto. This assignment may be taken as its own proposition.

The proposed expert testimony was pertinent, competent and admissible, because it was strenuously contended upon the trial by counsel for appellee that a man, when struck as appellee says that he was struck, would have been knocked away from and not under the train, and also to show the reasonableness of appellant's case, and in order to show that the testimony of witness Parish (appellee's main witness) was false and unreasonable, because impossible for a man to catch a train running twenty-five miles an hour and hold on to it without having his arm torn off or his body torn in two. Gulf, C. & S. F. Ry. Co. v. Matthews, 66 S. W., 588; 67 S. W., 788; San Antonio & A. P. Ry. v. Waller, 65 S. W., 210; 17 Cyc. of Law, pp. 79, 208 and 240.

*Baker, Botts, Parker & Garwood, D. C. Bolinger* and *W. F. Ezell,* for appellee.—A new trial will not be granted on the ground of newly discovered evidence of three witnesses where the existence of such evidence as to two of the witnesses was known before the trial began, and, as to the third witness, was known to the appellant before the conclusion of the trial, and no continuance was requested to procure such testimony. Johnson v. Brown, 65 S. W., 485; El Paso S. W. Ry. Co. v. Barrett, 101 S. W., 1025; Handley v. Life Assn. of America, 69 Mo., 380; Fleming v. McClafflin, 27 N. E., 875.

Applications for new trial on account of newly discovered evidence are addressed to the discretion of the court, and the action of the court will not be reversed unless there is apparent abuse of such discretion. Mitchell v. Bass, 26 Texas, 377; Gulf, C. & S. F. Ry. v. Reagan, 34 S. W., 798; Dotson v. Moss, 58 Texas, 156; Smith v. Seymore, 59 S. W., 817; Phifer v. Mansur Imp. Co., 61 S. W., 969.

The court did not err in refusing to permit appellant to read in evidence to the jury interrogatories and answers the purpose of which was to show that the witness had been convicted of a crime, as such testimony is not admissible for the purpose of discrediting the testimony of a witness in a civil action. Crawleigh v. Galveston, H. & S. A. Ry. Co., 67 S. W., 142; Missouri, K. & T. R. R. Co. v. De Bord, 53 S. W., 593; Gulf, C. & S. F. Ry. Co. v. Johnson, 83 Texas, 628; Hill v. Dons, 37 S. W., 638.

JAMES, CHIEF JUSTICE.—Plaintiff De Hoyes sued for damages for negligence, alleging as the negligence that while he and certain other

of defendant's employes were doing track work near Polvo, and while plaintiff was standing about five or six feet from the track a freight train passed and he was struck by a piece of timber or hard substance projecting from one of the cars, and knocked under the wheels, which resulted in his injuries.

Defendant pleaded general denial, contributory negligence, and negligence in needlessly and recklessly attempting to catch a car which threw him under the train. Defendant also pleaded a release. The verdict was for defendant.

The first assignment of error contends that the court erred in not granting a new trial for newly discovered evidence, to wit: testimony of Marshall Norris, Jose Tamayo and Martin Hernandez. Appellant in his affidavit states that the two Mexicans were with him when he received his injury, that Tamayo was only known to him as "Jose;" that when plaintiff was being conveyed to El Paso on the way to the hospital, Jose gave him his name on a slip of paper and told plaintiff that he saw the projection from the train strike him. This slip of paper plaintiff lost and not knowing Jose's surname, diligent effort by many inquiries and various investigations and many letters to find the family name and whereabouts of "Jose," as well as the other Mexican, failed, and plaintiff did not discover Jose's family name until January 2, 1908, when the deposition of the witness Parrish was filed in this cause, when for the first time he became informed of the names of said Mexicans, although he and his attorneys had been using their best efforts to find out their names and residences. That with the information now in plaintiff's possession of the names of said witnesses, and information he now has of their relatives in Mexico, he can locate them and have their testimony at another trial.

The cause came on for trial on January 9, and yet plaintiff went to trial without either of these witnesses, having, as he states, positive knowledge from one of them that he would testify that the event happened as alleged and testified to by plaintiff, and without any effort to postpone the case for further efforts to obtain this, to him, very important testimony. The importance of the testimony was apparent as plaintiff was going into a trial with only his own testimony to support his case. It seems to us that the course pursued by plaintiff bars his right to a new trial for the purpose of getting the benefit of said testimony, he having seen fit to go to trial and speculate upon the chances of getting a verdict upon his own testimony, knowing of the testimony of said witnesses, and having recently been put in possession of the means by which to trace them.

The other witness was one, Norris, who appellant shows would testify (in substance), according to an affidavit obtained from him, that he was on the train in a box car carrying a horse to Tucson; was sitting in the open door of the car with his feet hanging out. He noticed two or three Mexicans standing still just outside of the path of the train, and just immediately after his car passed them the car gave a jolt which caused the horse to stumble, when witness jumped up to attend to the horse, and when he caught and tied the horse, the train was backing and then he saw the man lying near the track with his leg mashed. Witness saw none of the Mexicans attempt to catch at

the train and was sure he would have seen this had they done so. The affidavit proceeds to state that witness had picked up all sorts of stuff such as planks, rails, pieces of trees and cross-ties and piled them in the car to make fire with in a furnace or oven during the night. There were other things in there, including a shovel and maybe a rake. "Sometimes the stuff I had in there to burn would jolt down towards the door and fall out. . . . One of the pieces might have been sticking out of the car, and I not have noticed it, as my face was turned toward the engine for quite a while. . . . These pieces of wood varied from a foot to fifteen feet in length more or less, some might have been scantlings 2 x 4. . . . The car was in bad condition, the door being loose, when open like I had it, would swing out beyond the ordinary reach of the train. It may have been that a piece of wood or scantling sticking out of the car struck De Hoyes and the force of the lick may have knocked it back in the car. The car door when open was six feet or more wide. I helped pick up the injured Mexican and helped carry him into the caboose."

It was made to appear from the affidavits that plaintiff and his counsel first learned of Norris through the testimony of Matheney, a witness for defendant, at the trial, who testified there was a car on the train with a horse in it. Appellant's counsel asked him questions which he answered, stating that there was a negro in charge of the horse riding in the box car with the horse, that he didn't know where the negro is now, that his residence is in San Antonio, that he said he lived in San Antonio at the time, and that his name is Marshall Norris. The witness also stated that the car was next to the caboose. That witness did not know whether or not the negro might have stuck something out of the side of the car, he may have done so, but witness did not see it. Affidavit was also made stating that counsel thereupon began to make diligent inquiries and investigations for the whereabouts of Norris. "I examined the city directory and the telephone books of San Antonio to see if I could find his name, but could not, and also instructed plaintiff to make diligent inquiries, but we could not find out the place of residence of said witness Marshall Norris before the trial was ended; that after said trial was concluded and on the next day thereafter, to wit, on the 12th day of January, 1908, I ascertained for the first time that the said Marshall Norris resided in San Antonio, Texas; this information I obtained from G. C. Brown, Esq., and also the street number of the residence of Norris. I thereupon, in company with Mr. Owens, went to the residence of Norris where I found him and then learned for the first time of what he knew concerning the accident." The witness Matheney testified on the morning of January 10, and the trial ended some time on the 11th. Appellant, therefore, became informed during the trial of the fact that Norris probably knew, something of this occurrence, and if it really occurred as plaintiff claimed, the probability was that if he knew anything about it, his testimony would be favorable to plaintiff. In these circumstances plaintiff would not have been justified in going on and submitting the case to the jury, without having made some proper effort to have Norris as a witness, and afterwards, on finding that Norris's testimony was in fact favorable, to ask for a new trial. Counsel appreciated this and to a certain extent acted

upon the principle. He went to work diligently, it seems, trying to find Norris to have him before the trial was finished. This, however, was not enough diligence, to be shown afterwards, to entitle him to demand a new trial. If plaintiff really wanted Norris as a witness, or wanted a fair opportunity to locate him and to find out what he knew, he should, when it was apparent that he was not immediately to be found and the trial nearing the end, have endeavored to have the case postponed in some way in order to afford him a reasonable opportunity to do so. It is true that such a motion might not have been granted, but it would at least have had the effect of placing plaintiff in the position of having done all that he was able to do under the circumstances, to get the benefit of what Norris knew. As it is, appellant may be said to have wanted Norris as a witness at this trial and to have him there, if he could find him, but, failing to do so, was nevertheless willing, with the testimony he had, to go on with the case and take the chance of a favorable verdict. We think there was no error in refusing the new trial.

The proposition under the second assignment is multifarious and should not be considered under the rules.

The charge complained of by the third assignment is not obnoxious to the attack made upon it.

The fourth, fifth and sixth assignments are overruled for the reason that the verdict read in connection with the charge shows that it was not based upon any finding in reference to the defense of release, and errors if any, which concern that issue are now immaterial.

The seventh assignment is not a proposition in itself though briefed as such. Besides, it has reference to the issue of release.

The eighth, ninth and tenth assignments are as follows:

8. "The court erred in refusing to allow J. C. Davis, an experienced railroad man, and duly qualified as an expert witness, to testify in behalf of plaintiff as to what effect it would have on a man catching on to the handle of a manifest car in a train running twenty-five miles an hour, and what effect the suction of a train running at a certain speed would have on a man struck by a projection from said train, as set forth in plaintiff's bill of exception No 4."

9. "The court erred in refusing to allow J. C. Davis to testify in rebuttal as to which way a man would probably be knocked who was standing by the track of a railway and was hit by a projection from a running train, as set forth in plaintiff's bill of exception No. 5."

10. "The court erred in refusing to allow J. B. Pruitt and W. B. Bur, both experienced men, to testify in rebuttal to cumulative facts as proposed to be proved by said J. C. Davis, which is set forth in plaintiff's bill of exceptions Nos. 6 and 7."

The bill of exceptions upon which the eighth is founded shows that the answer which Davis was expected to give was not responsive to the question, and we therefore forego further consideration of that assignment.

The ninth assignment involves this question and expected answer:

"Mr. Davis, if a man is standing up by the side of a railway track— we will say that the track is comparatively level there where he was standing and the ground where he is standing is level—with his right side toward the train and the train comes along at twenty-five

miles an hour, and a projection of lumber or some other hard substance projecting from the side of the train strikes him on the back of the shoulder there (indicating shoulder) which way would it most probably knock him and what would it do with him, in your opinion?"

Counsel stated that the witness "understood, and from personal experience and observation, whether or not the suction or current of the train running at twenty-five miles an hour would have a tendency, where a man was struck on the back or shoulder on a level place, to whirl him under the train or on the track, and in this case he would testify it would do so."

Admitting that this was the subject of expert evidence, the hypothetical question did not embody the testimony sufficiently. Plaintiff testified that he was about four or five feet from the track. The question did not embody this fact, but as framed the question conveyed the idea that he was standing up by the side of the track. Of course the distance would make a difference, and if the fact had been stated as the evidence showed it, the witness may not have been willing to testify as counsel announced. To all appearances the witness did not know that plaintiff claimed to have been struck four or five feet from the track—the question did not say so—but from the question he was apt to understand that the person was standing "up by the side of the track," or closer than the above distance. For this reason the exclusion of the answer was warranted.

Furthermore, we think that the proposed answer of the witness was hardly the subject of expert testimony. The answer would have been this in effect: That under the conditions given, one of which was that the person struck was standing up by the side of the track, the suction or current caused by the movement of the train would *have a tendency* to throw him under the train. The tendency of suction to draw objects in its direction is a matter as well known to a jury as to the most accomplished expert. However, a person experienced in railroading necessarily acquires special knowledge concerning the force of the suction or currents incident to the rapid moving of trains, which others do not possess, and if the distance at which plaintiff stood from the passing train had been given the witness, it might be he should have been allowed to state the effect, if any, of a current caused by such a moving train, upon a man struck at that distance.

The disposition of this assignment applies to the question involved in the tenth assignment, it being the same.

The eleventh complains of the court refusing to allow plaintiff to read certain special cross interrogatories and answers, "to the effect that the witness admits in his answers that he had been convicted and sent to the penitentiary." This assignment is submitted as a proposition. It is merely a statement that the court erred in refusing to allow plaintiff to read said answers of the witness This is not a proposition disclosing the point intended to be relied on.

The twelfth assignment alleges that the court erred in this charge: "If you believe from the evidence that while the train was passing plaintiff he attempted to catch on to one of the cars of the train and in some way lost his hold or footing and was thereby injured in the way

you find he was injured, then the plaintiff cannot recover and you must return a verdict for the defendant."

The criticism is that the court by this instruction charged on the fact of negligence. The charge was correct for the reason that under plaintiff's pleading he sought to recover on a totally different state of facts, and upon the facts stated in the charge, if found, plaintiff was not entitled to recover. Gulf, C. & S. F. Ry. v. Johnson, 98 Texas, 76.

*Affirmed.*