GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY V. S. T. HARPER.

Decided February 10, 1909.

**1.—Evidence—Photograph.**

In an action for personal injuries, a photograph of the injured person taken two months before the injury in connection with testimony that it was a good likeness at the time it was taken, and that his physical condition at the time of the injury was the same as when the picture was taken, was admissible in evidence, his physical condition before and after the accident being an issue in the case.

**2.—Witness—Competency—Evidence.**

One is competent to testify that a photograph of himself is a correct likeness.

**3.—Evidence—Rule of Railway Company—Pleading—Negligence.**

Where the railway company was charged with negligence in that the train was suddenly, violently and negligently stopped by application of the emergency brake, and it was alleged that such application has the effect practically to lock the wheels of the engine and cars and stop same from revolving and suddenly stopping the train, and produces a violent and sudden jerk and jar, a rule of the company stating that "on a long train, if an engine-man's brake-valve be opened suddenly and wide, allowing the pressure to escape quickly, the brakes will be set on the front end sometime before those on the rear end, causing a severe shock on the train; then if the valve be closed quickly without giving time for the pressure to be equalized throughout the entire train, the forward brakes will become released, causing further severe shocks," was admissible in evidence in connection with proof that the emergency brakes were applied, as tending to prove the allegations. It was not necessary to plead the rule in order to use it, unless the action was predicated on its violation.

**4.—Negligence—Operation of Trains—Railways—Charge.**

Under allegations that it was the duty of the engineer in taking a siding, as the train in question was doing, to go slowly and to have the train under full control by entirely cutting off the steam or reducing the steam pressure, owing to the grade, and by reducing the air pressure a little at a time, which is the usual, customary and proper mode, which produces no jolt or jar, and proof that the engineer had not complied with his duty, but had seventy or eighty pounds of air pressure, and suddenly and violently threw that pressure on the wheels, the court was authorized to submit the issue of negligence on the part of the engineer in failing to so handle or control his engine as to be able to stop the train and avoid a collision by making a "service application of air" and service stop.

**5.—Same—Charge—Omission in Charge—Definition of Terms.**

Allegations as to the "usual, customary and proper mode" of application of air justified the use in the charge of the term "service application of air;" and the failure to define or explain the term did not constitute error, in the absence of a request for a charge supplying the omission.

**6.—Same—Operation of Train—Sudden Stop to Avoid Collision.**

Where the pleading and evidence showed that the engineer ran his train on the sidetrack at too great a rate of speed and did not keep a proper lookout for obstructions, and that, not having his train under proper control, he ran it so close to a car on the siding as to render necessary the application of the emergency brakes which caused injury to the plaintiff, the court properly instructed that unless the engineer had been guilty of negligence as alleged, there could be no recovery, and charges taking the case from the jury and instructing that negligence was not inferable from the mere happening of the accident, were properly refused.

**7.—Evidence—Answers not Responsive—Excluded Testimony.**

When the trial court excludes the answers of a witness on objection that they are not responsive to the questions, and instructs the jury not to consider same, the Appellate Court will presume that the jury obeyed the instruction.

**8.—Same—Gratuitous Remarks of Witness.**

When the remarks of a witness are gratuitous, not called for by the questions, the party asking the questions will not be held responsible, especially where the court has rebuked the witness and withdrawn the statements from the jury.

**9.—Verdict—Personal Injuries.**

Evidence considered, and verdict awarding fifteen thousand dollars for personal injuries held not excessive.

ON REHEARING.

**10.—Motion for Rehearing—Charge—Practice.**

Objections urged to the charge which do not raise questions going to the foundation of the action, will not be reconsidered on a second motion for rehearing.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*Baker, Botts, Parker & Garwood* and *Beall & Kemp,* for appellant. —The photograph, as evidence, was incompetent and irrelevant. Photographs are admissible in certain instances to identify persons, places and things, and to exhibit particular localities or places where it is important that the jury should have a clear idea thereof, and the situation may thus be better indicated than by the testimony of witnesses, but they are not admissible for the purpose of showing the appearance of a person prior to an accident, wherein he was injured. Willis v. State, 90 S. W., 1104; Thompson v. Galveston, H. & S. A. Ry. Co., 106 S. W., 914; Rock Island v. Drost, 71 Illinois App., 613; Gilbert v. West End St. R. R. Co., 160 Mass., 403.

The photograph in question was inadmissible in evidence because it was not shown, as a preliminary requisite to its introduction, that it was accurately taken, and was a correct likeness of the plaintiff at the time it was taken. We do not think a man competent to testify that

a photograph of himself is a correct likeness. 9 Ency. of Evidence, p. 771; 22 Am. & Eng. Ency. of Law, 2d ed., 775.

The rule put in evidence was not plead, and was therefore not admissible. Pacific Exp. Co. v. Darnell Bros., 62 Texas, 641; Thompson v. Thompson, 12 Texas, 327; Mims v. Mitchell, 1 Texas, 443; Lemmon v. Hanley, 28 Texas, 219.

It was error to submit to the jury as an issue the engineer's failure to discover the presence of the cars on the side-track in time to have stopped his train with the service application of air, as the pleadings and evidence did not warrant such instruction, and the jury were not instructed as to what was meant by the service application of air, and said instruction was not warranted by the pleadings and evidence, and was calculated to confuse the jury. Neither the pleadings nor the evidence raised any issue or question of negligence on the engineer's part in failing to so handle or control his engine as to be able to stop the train and avoid a collision by making "a service application of air and service stop," and it was therefore error to give the charge shown for the reasons shown by the assignment. A charge should not submit to the jury matters not within the scope of the pleadings. Railway Company v. Measles, 81 Texas, 478.

An issue must be made by the evidence, as well as the pleadings, to authorize its submission to the jury. Texas & P. Ry. Co. v. Hightower, 33 S. W., 542; Island City Boating Ass'n v. New York & Texas Steamship Co., 80 Texas, 378, 379.

An erroneous charge is presumed to have been injurious. Emerson v. Mills, 83 Texas, 388; Railway v. Greenlee, 62 Texas, 344; T., B. & H. Ry. Co. v. Warner, 88 Texas, 647.

*Moore & Moore* and *T. A. Falvey*, for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by appellee to recover damages arising from personal injuries received through the negligence of appellant. The cause was tried by jury and resulted in a verdict and judgment for appellee in the sum of fifteen thousand dollars. The evidence shows that appellee was a rear brakeman on a freight train of appellant, and in October, 1907, when the train was going on a side track at Marathon, a station on appellant's line of railway, appellee was standing on the front platform of the caboose in performance of his duties, and the train was suddenly, violently and negligently stopped by application of the emergency brakes, and appellee was thrown forward about twelve feet, striking with great force against a brake wheel on a flatcar, and was seriously and permanently damaged.

The court permitted the introduction in evidence of a photograph of appellee taken on August 12, 1907, two months before he was injured. Appellee swore that it was a "good likeness" at the time it was taken, and that his physical condition at the time of the accident was the same as when the picture was taken. The physical condition of appellee before and after the accident was an issue in the case, and the photograph, especially as appellee swore that it was a good "counterfeit presentment" of himself, was admissible in evidence. Appellant

argues that a man is not "competent to testify that a photograph of himself is a correct likeness," but we see no reason why he should not be. Appellant made no effort to show that the photograph was not a correct representation of the physical form of appellee at the time it was taken.

Appellee, over objections on the part of appellant, placed in evidence the following from its book of rules and regulations: "Rule 42. On a long train, if an engineman's brake-valve be opened suddenly and wide, allowing the pressure to escape quickly, the brakes will be set on the front end some time before those on the rear end, causing a severe shock on the train; then, if engineman's valve be closed quickly, without giving time for the pressure to become equalized throughout the entire train, the forward brakes will become released, causing further severe shocks to the train. This mode of handling brakes almost invariably results in drawheads being pulled and broken." The objections to the evidence were that it was irrelevant, incompetent, and not authorized by the pleading. It was alleged in the petition that the emergency brakes were applied to the train and that such application "has the effect practically to lock the said wheels of said engine and cars and stop the same from revolving and suddenly stopping the movement of said train, and produces a violent and sudden jerk and jar," and the language of the rule was admissible, in connection with proof that the emergency brakes had been applied, as tending to prove the allegation in the petition. The rule was not pleaded and was not admitted for the purpose of proving that there had been a violation of it, but merely as tending to show the effect of the application of the emergency brakes. Appellee stated at the time the rule was introduced that it was not offered on the question of negligence, but merely to show what effect air has on the appliances. If appellant desired the evidence to be restricted by the charge to the specific purpose for which it was introduced, it should have requested an instruction to that effect. It was not necessary to plead the rule in order to use it unless the action was predicated on a violation of it.

The third assignment of error complains of the sixth section of the charge because "neither the pleadings nor the evidence raised any issue or question of negligence on the engineer's part in failing to so handle or control his engine as to be able to stop the train and avoid a collision by making 'a service application of air and service stop.'" The petition alleged that it was the duty of the engineer in approaching the station or in taking the side-track, as this train was doing, to go slowly and to have the train under full control by entirely cutting off the steam or reducing the steam pressure, owing to the grade, and by reducing the air pressure a little at a time, which is the usual, customary and proper mode, which produces practically no jolt or jar. It was further shown that the engineer had not complied with his duty, but had seventy or eighty pounds of air pressure on the train, and suddenly and violently threw that pressure on the wheels of the train. We think the term "service application of air" as used in the charge was justified by the allegations as to the "usual, customary and proper mode" of application of air, but if the appellant thought the term should be defined and explained it should have asked a special

charge performing that office. (Chaddick v. Haley, 81 Texas, 617.) The issues presented by the criticised charge were raised by the pleadings and supported by the evidence. The fourth assignment of error is practically a reiteration of the third, and the disposition made of that assignment applies to this.

The court did not err in refusing to present a special charge to the effect that only the happening of the accident had been proved and the evidence did not show that it was caused by negligence. It was alleged in the petition that the engineer ran his train on the side-track at too great a rate of speed, and did not keep a proper lookout for obstructions, and not having his train under proper control, that he ran in so close to a car on the siding as to render necessary the application of the emergency brakes, which caused appellee's injuries. The allegations were sustained by the proof. The fireman, who was on the engine at the time of the accident, swore that he had not been looking for cars on the siding; that the train was running six or seven miles an hour; that he could have seen fifteen car lengths, or 450 feet, ahead if he had been looking; that the cars on the siding were not seen until the locomotive was within thirty-five or forty feet of them and, with the emergency air, which locks every wheel on the train, it moved twenty or twenty-five feet before it stopped. He stated that the cars on the siding were thirty car lengths, or 900 feet, from the switch. The engineer was not placed on the stand. The jar to the train was so great that it not only threw appellee down but threw a man in the caboose off the seat against the door, broke the shades of the lights and turned the refrigerator over. It would have been gross error to have taken the case from the jury, as requested by appellant.

The court did not err in refusing an instruction that negligence was not inferable from the mere happening of the accident. The court fully instructed the jury that unless the engineer had been guilty of negligence as alleged, that appellee could not recover, and the special charge would not have assisted the jury in the least in arriving at a correct verdict.

The seventh assignment is disposed of by the disposition of other assignments herein, and the eighth assignment of error is without merit. The only part of the testimony of Dr. Staten objected to by appellant was not responsive to the question asked him by appellee, and the court sustained the objection to it and instructed the jury not to consider it. The same is true of the statement made by the same witness, which is the subject of the ninth assignment of error. We presume the jury obeyed the court and did not consider the statements. The remarks of the witness were gratuitous, not called for by the questions of appellee, and he should not be held responsible for them, especially when the court has rebuked the witness and withdrawn the statements from the jury.

The evidence is sufficient to show that the engineer, in going on the siding at a speed of six or seven miles an hour, did not have his train under control, or it would not have been necessary to use the emergency brakes. There was no necessity for the violent and unusual mode of stopping the train, except such as had been created by the negligence of the engineer and fireman.

It appears from the facts that prior to the accident appellee weighed 157 pounds and was in good physical condition; that he had stood a physical examination for employment by appellant's physician and that he had performed his work as a brakeman in a satisfactory manner. At time of the trial he was in a weak and emaciated condition, weighing 121 pounds, had a movable or floating kidney, and his muscles and parts of his hands were atrophied. Both kidneys were diseased. The doctors agreed on his condition but differed as to the cause of it. Some of the doctors swore that the floating kidney, atrophy of the muscles and wasting away of appellee's flesh, should be ascribed to the fall he had on the train. The circumstances point to the accuracy of that conclusion and the jury found in favor of it. If the pitiable condition of appellee was superinduced and brought about by the fall he received through the negligence of appellant, a verdict for fifteen thousand dollars can not be deemed to have been the outcome of passion or prejudice, and can not be held to be excessive by this court. The judgment is affirmed.

*Affirmed.*

#### ON MOTION FOR REHEARING.

This is a second motion for rehearing, the first having been overruled by this court. In the brief the only proposition under the fourth assignment of error, which is the subject of the motion for rehearing, was that the allegations and facts did not justify the charge complained of and that the term "service application" was not defined. As appears in our former opinion, the facts justified the charge, and there was no merit in the objection to the use of the term "service application of air." Now at this late date, after the first motion for rehearing has been overruled, for the first time appellant seeks to raise objections to the charge not contemplated before. We have considered the objections now urged to the charge and find that they do not raise questions going to the foundation of the action, and we decline to consider them further. The motion is overruled.

*. Overruled.*

Writ of error refused.