SOUTHERN GAS & GASOLINE ENGINE
CO. v. ADAMS & PETERS.   (No. 7409.)

(Court of Civil Appeals of Texas.  Galveston.
Nov. 15, 1917.   Rehearing Denied
Nov. 22, 1917.)

1. SALES ⊂⊃442(5)—BREACH OF WARRANTY—
DAMAGES—WHAT CONSTITUTES.
Where plaintiff sold a tractor, providing that
it should not be held responsible for damages in
the use thereof either original or consequential,
and that defendant should make good any loss to
the tractor caused by fire, carelessness, or ma-
licious injury until fully paid for, defendants
could, in an action for the purchase price, set
off the loss to their crops owing to the defects
in the tractor; such damages not being conse-
quential nor special.

2. SALES ⊂⊃354(7)—PLEADING—DFEECTS IN
GOODS—SUFFICIENCY.
In action for purchase price of tractor, an-
swer alleging that the engine as a whole and
throughout all of its parts showed defective
material and workmanship, and that it gave
way, further specifying a number of parts
which broke, was not indefinite and uncertain.

3. APPEAL AND ERROR ⊂⊃1053(6)—EVIDENCE
—CURE OF ERRORS.
Error, if any, in admitting testimony, in an
action for the price of a tractor, tending to show
defective design, was cured by instruction to
consider only defective workmanship and ma-
terials, and not to consider defects in design.

4. SALES ⊂⊃358(1)—EVIDENCE—ADMISSIBIL-
ITY.
In action for price of tractor under contract
not specifying the design of the engine to be
supplied, it was not error to admit testimony
tending to show defective design.

5. APPEAL AND ERROR ⊂⊃1052(5)—HARMLESS
ERROR.
Error, if any, in admitting testimony in an
action for the price of a tractor showing defec-
tive design, was harmless, where the jury found
that the engine was defective in both material
and workmanship.

6. DAMAGES ⊂⊃153—MEASURE OF DAMAGES—
INTEREST.
In action for price of a tractor, where de-
fendants counterclaimed for damages to the
crops and prayed an amount in excess of that
awarded, interest on the amount awarded could
be allowed, in the absence of a specific prayer
therefor.

Appeal from District Court, Harris County.

Action by the Southern Gas & Gasoline En-
gine Company against Adams & Peters,
wherein defendants filed a counterclaim.
Judgment for defendants, and plaintiff ap-
peals.  Reformed and affirmed.

See, also, 169 S. W. 1143.

Bryan & Bryan, of Houston, for appellant.
Fisher, Campbell & Amerman, of Houston,
for appellees.

GRAVES, J.   This suit was brought by
the Southern Gas & Gasoline Engine Com-
pany, appellant, against Adams & Peters, a
partnership, appellees, for the recovery of
the balance due on the purchase price of one
20 H. P. Flour City traction engine, sold by
appellant to the appellees in October, 1911.
Appellees filed an answer, alleging that the
engine was defective as a whole and in all of
its parts in material and workmanship, and

would not do the work it was sold to do,
and claiming damages for the difference be-
tween the value of the engine at the time de-
livered and the price which they contracted
to pay for same, with interest, and for money
spent in making repairs upon the engine, and
for damages suffered by them in the losses
on their potato crop by reason of its defec-
tive condition and failure to work properly.
The case was submitted to the jury on special
issues, all of which were found in favor of
appellees, and judgment was rendered there-
on in their favor, awarding a recovery of the
difference between the contract price and the
value of the engine delivered, and for freight
and demurrage, and for damages for delay in
harvesting their potato crop, all aggregating
$836.31, over and above the amount due the
appellant, and judgment was rendered
against it in favor of appellees for that
amount, from which this appeal is prose-
cuted.

The court, however, in entering this judg-
ment for them, refused to allow appellees
interest at 6 per cent. per annum upon the
amount of damages found in their favor by
the jury, or the balance due them after off-
setting the amount due appellant, from the
date the same were found to have been sus-
tained, June 15, 1912, until the trial, which
would have entitled them, as they alleged, to
judgment for the larger amount of $863.23,
with 6 per cent. annual interest thereon
from October 19, 1912, until paid.  Upon the
court's denial of their motion to so allow
them interest, they filed and have pre-
sented here a cross-assignment raising that
issue.  The case, then, is regularly before
this court upon a number of assignments urg-
ed by appellant, and the cross-assignment of
appellees relating to interest.

[1] By appellant's first two assignments
it is contended that appellees were not en-
titled to offset against its debt sued upon any
damages they might have sustained for the
loss of or for delay in marketing their potato
crop, because it appears from the express
terms of the written contract between them
that appellant was not to be held responsible
for damages in the use of the machinery, ei-
ther original or consequential, and, such dam-
ages being consequential, no counterclaim
therefor would lie.  The provision of the
contract referred to is as follows:

"It is a further condition of this contract
that the Southern Gas & Gasoline Engine Com-
pany shall not be held responsible for damages
in the use of this machinery, either original or
consequential, and purchaser shall make good
any loss to them on same caused by fire, care-
lessness, or malicious injury until same is fully
paid for."

With much earnestness it is argued that,
in defining damages, the terms "special" and
"consequential" are synonyms for one and
the same thing, and hence identical; that
the $1,734.30 received by appellees for the

loss sustained by them from the delay in marketing their potato crop, because of the failure of the engine to work properly, being "special damages," are likewise "consequential damages," and therefore within the quoted terms of the contract. But, while appreciating its force, we are unable to agree to this construction of the meaning of the contract. Upon the contrary, we agree with the trial court that its terms did not exempt appellant from the kind of damages here obtained against it, and think it quite plain that the damage appellant had in mind in preparing the contract was some damage which might occur during the actual operation of the engine, such as the explosion thereof, or the breaking or flying off of a part of the machinery, or some other such injury resulting proximately from the actual operation of the machinery, for which it might otherwise have been liable. This view of its meaning and intent is strengthened, it seems to us, by the correlative obligation placed by the last clause of the quoted paragraph upon appellees to indemnify appellant for any loss on the engine itself, pending full payment for it, resulting from fire, carelessness, or malicious injury; in other words, it was evidently contemplated upon the one hand that careless, incompetent, or even malicious use or operation of the engine might subject appellant to liability for damages as its consequence, or upon the other result in the destruction or substantial injury to the machine itself, and it was sought to thus exempt appellant from responsibility or loss in either contingency. A further consideration is that the damage so recovered for did not result from any actual use or operation of the engine, but rather from its nonuse or failure to operate at all. Both assignments are overruled.

[2] The third assignment challenges the sufficiency of the allegations in appellees' answer, charging, in effect, that the engine broke and gave way in its various parts and would not do the work it was sold and represented to do, on the ground that they are too vague, indefinite, and uncertain in not specifying what parts broke or gave way, and what particular work it was represented the engine would do. But, when considered as a whole, we think the answer sufficiently set out the nature and extent of the defects complained of, and gave appellant ample notice of what it must meet in contending that the engine filled the requirements of the contract and would do the work it was claimed by appellees to have been sold to do. It was charged that within one year from the date of shipment the engine as a whole, and throughout all of its parts and appurtenances showed defective material and workmanship; that by reason of such defects, it began to and did break and give way, and that among the inferior and defective parts that so broke, gave way, and failed to prop-

erly work were those specified in a long itemized list; that appellees, within the year's time called for in the contract, notified appellant of all these conditions, and that the engine was absolutely worthless, and in vain demanded that it replace the same with one of good workmanship and material. It was further alleged that the engine had been sold to appellees under the repeated representation that it was a traction engine of 20 horse power, and of the very best workmanship and material, made after previous notice of just what work they desired it to do upon their potato farm in Brazoria county, Tex., and that it would do that particular work. This assignment cannot therefore be sustained.

[3] As the fourth, fifth and sixth assignments raise in varying forms essentially, or at least in practical effect, the same issue, they will be treated together. The first of these assails the admission of testimony which, it is claimed, tended only to show that the engine in question was manufactured upon an incorrect design or plan of construction, while the other two attack the court's rulings in not sustaining an exception to a special issue, and in not giving a requested charge, both based upon the contention that appellant would not, under the contract sued upon, be responsible for damage resulting from any such defective design. The argument is that, when boiled down, the complained of testimony of the witness R. C. Adams only tended to show, if indeed that much, that certain parts of the engine, including, among others, the connecting rod-bearing surface on the crank shaft, the rocker arms, the housing of the cam shaft, the connecting rod bolts, and the piston pins, were manufactured upon an incorrect design, and that, in an action for damages for breach of a specific warranty of workmanship and material against the seller of an engine, not its manufacturer, it is error to admit evidence which reflects upon the design or plan of construction of the various parts of the engine, since such seller does not impliedly warrant the sufficiency of its design and is not responsible for damage resulting from defects therein. The leading cases cited in support of this position are the following: J. I. Case Plow Works v. Niles & Scott Co., 90 Wis. 590, 63 N. W. 1013; Bancroft v. San Francisco Tool Co. (Cal.) 47 Pac. 684; Wilson v. Avery, 182 S. W. 884. A careful examination of the voluminous testimony of the witness Adams discloses that there was much of it that went to other matters than mere defects in the design or plan of the engine and its various parts, that is, to defects in workmanship and material, and such is our finding of fact; but conceding, for the sake of argument, that some of it did only tend to reflect upon the plan of building of different parts of the engine, then we think that any error that may have been committed in admitting that much of it was cured and

rendered wholly harmless by the following instruction in the court's charge:

"Was or was not the workmanship used in the construction of the engine involved in this controversy of the best class? In connection with this question and your answer thereto, you are charged that you will not consider any defects, if any, in the design of the engine, or its parts, in so far as the design is distinguishable from the workmanship thereof." Railway Co. v. Gober, 125 S. W. 383; Boardman v. Woodward, 118 S. W. 551; Railway Co. v. Matherly, 35 Tex. Civ. App. 604, 81 S. W. 589, affirmed 98 Tex. 625; Railway Co. v. Brown, 33 Tex. Civ. App. 269, 76 S. W. 794; Knowles v. Railway Co., 121 S. W. 232.

It must also be presumed that the jury both understood and followed this specific direction from the court, and did not consider that portion of Adams' testimony relating alone to defects in design of any part of the engine. Ashcroft v. Pouns, 1 Tex. 594; M., K. & T. Ry. v. Craig, 52 Tex. Civ. App. 611, 114 S. W. 850; M., K. & T. Ry. v. Flood, 35 Tex. Civ. App. 197, 79 S. W. 1106, affirmed 98 Tex. 625; H. & T. C. Ry. v. Hester, 7 S. W. 776; Railway v. Harper, 53 Tex. Civ. App. 614, 114 S. W. 1168, affirmed 114 S. W. 1199; Patterson v. Frazer, 93 S. W. 146. Furthermore it was not practicable for the court in advance to determine what part of the testimony might relate to design and what part to material and workmanship only, in a complicated piece of machinery such as this engine was, for the reason that the line of demarcation between defects of the one or the other kind was necessarily narrow and not easily distinguishable.

[4] But for a much more deeply lying reason we think the three assignments now under consideration cannot be sustained, and it is that, under the contract here sued upon, no fixed nor particular design of engine had been agreed upon and accepted between the parties. For that reason, if for no other, the principle followed in the cases hereunder relied upon by appellant do not fit the developed facts of this case, and cannot rule it. We quite agree with appellant, and with the holding of the two cases cited from other states, that if a certain design of construction is submitted and agreed upon, and it is contracted that the machinery, or other product, shall be manufactured and delivered in accordance with such design, but of good material and workmanship, the purchaser cannot thereafter claim a breach of the contract for good workmanship, because, forsooth, the model or design which he examined, approved, and contracted for afterwards proved inadequate for the purpose desired, or of improper construction and upon wrong mechanical principles.

The two cases cited by appellant go no further than such a holding. In the Bancroft Case, plans and specifications of the elevators, including the drums, were submitted, examined, and approved, and it was contracted that the same should be put in "as per plan and specifications submitted." In the Case Plow Works Case, the purchaser "specified the sizes and dimensions and materials of the plan, and kind of wheel it desired, and its agents looked over and examined similar wheels, manufactured by the vendor, which had been tested in their presence, as to their quality and strength," and the court said that "the plaintiff must be held to have obtained that for which it contracted." A careful reading of the opinions shows that the court's holding in each case was based upon the previous approval of the particular design. The third case cited (Wilson v. Avery Co., 182 S. W. 884), while not, we think, at all relevant here, simply holds that where the purchaser had himself tendered the issue that the engine was constructed on a wrong mechanical principle, and for that reason would not do the work and was valueless, he could not complain of the admission of evidence in rebuttal that the company's other engines of like construction and plan would and did do the same work.

[5] Looking to the record here, we find that the contract of sale contained no plans or specifications of the particular design of engine sold, the only descriptive reference to it therein being, "One 20 H. P. Flour City Gasoline traction engine," nor had any such design been otherwise agreed upon. True, appellant's president testified that, prior to the sale, he exhibited to one of the purchasers, Mr. Adams, one of their 30 horse power engines then in stock, and also a catalogue of the 30 and 40 horse power sizes, but that up to that time the 20 horse power size they finally sold him had not been catalogued. Both Mr. Adams and Mr. Peters, however, with whom alone all negotiations with appellant were had, denied that they knew anything about the design, construction, or detailed arrangement of the engine, or that they had ever seen any catalogue, or printed plans and specifications of the same, prior to signing the contract of purchase. But even if we are unjustified in finding that no particular design of engine was fixed by the terms of the contract, and, further, if error was committed by the court in admitting any of the evidence, or in making either of the other rulings complained of in these assignments, we yet think such action became harmless when the jury found that the engine was defective in both material and workmanship, and that, by reason thereof, appellees were delayed in harvesting their potato crop, because appellees, upon such findings, became entitled to recover the damages suffered resulting from that delay, without reference to the question of whether or not the design of the engine was in any respect defective. In other words, the verdict rested upon other issues supported by different and legal evidence.

In this connection, without detailing the evidence, we deem it sufficient to say that, not only did much of the testimony of ap-

pellee Adams relate to defects in workmanship and material, as has above been found, but, aided as it was by other evidence, there was ample support for the jury's findings that neither the workmanship nor the material in the engine were of the very best class as the contract had provided they should be, and that as a consequence appellees suffered damage in the amount so found for them; indeed, appellant's own witnesses, including the president of the company that manufactured the engine, upon cross-examination admitted that a number of the alleged defects testified to by appellee Adams, such as the use of "stud bolts" instead of "loose bolts," failure to cast the cam shaft boxes integral with the crank case or trunk, the omission of bushings from the piston of the motor, and the employment of a Heinze instead of Remy magneto, were real defects, or at least did not embody the best workmanship, and that remedying them would constitute "beneficial improvements," which could be effected without changing the design, or model of the engine. In fact, the last-mentioned witness, Mr. Kinnard, testified that all these changes had been made since the sale to appellees in 1911, and that his company was at the time of this trial manufacturing this same engine in its improved condition in the respects referred to, and upon the same model from which appellees' was made.

Any issue as to defects in the design alone of the engine having been thus eliminated, and the verdict and judgment having been grounded upon other and material issues amply supported by admissible evidence, errors, if any, in admitting any of Adams' testimony and in refusing the special charge requested were thereby cured, and no harm resulted to appellant. The three assignments presenting these questions are accordingly overruled. Railway Co. v. Jacobson, 28 Tex. Civ. App. 150, 66 S. W. 1111; Engledow v. James, 35 Tex. 81; Hancock v. Stacy, 103 Tex. 219, 125 S. W. 584; Simpson v. De Ramirez, 50 Tex. Civ. App. 25, 110 S. W. 149; 1 Michie's Texas Digest, p. 798, 1st col., 3d par., also (e), and cases cited; Shifflet v. Morelle, 68 Tex. 382, 392, 4 S. W. 382; W. P. Oil Co. v. State, 48 Tex. Civ. App. 162, 106 S. W. 918; De Hoyes v. Gal., etc., R. Co., 52 Tex. Civ. App. 543, 115 S. W. 75–77; Brown v. Johnson, 73 S. W. 49.

[6] The seventh and eighth assignments are overruled without discussion, because we think them without merit, and because in effect they raise the same issues next disposed of under our discussion of appellees' cross-assignment relating to interest. That assignment and its subjoined proposition are as follows:

"The court erred in refusing to allow appellees interest upon the amount of damages found in their favor by the jury, and the balance due thereon, from the date when the same were sustained, to wit, June 15, 1912, at the rate of 6 per cent. per annum.

"Proposition.

"Interest upon the amount of damages found is allowed by way of indemnification and full compensation for the injuries sustained, and as a part, and in the nature, of general damages, and the same will be allowed under a prayer for general relief, where the amount claimed in the pleadings is stated at a sufficient sum to cover the loss at the time of the claim, and the interest thereon from that date to the time of trial."

We are of opinion that this position is well taken and that the assignment must be sustained and interest allowed. The trial court's finding upon this matter, as recited in its judgment, is:

"The court finds that the defendants are entitled, as a matter of right and equity, to interest upon the amount of damages found in their favor by the jury from the date when the same were sustained, to wit, June 15, 1912, at the rate of 6 per cent. per annum, the amount upon which the defendants would be entitled to receive interest, of course, being reduced by the amount of the principal and interest of the deferred payments of the purchase price of the engine, as each payment matured and became payable, if the pleadings of the defendants, in the opinion of the court, permitted a judgment for defendants for such interest, and the court would allow interest upon the damages found as a part of the compensation and indemnification to which the court finds the defendants are entitled, if their pleadings permitted such recovery; but, it being the opinion of the court that the pleadings of the defendants will not permit this court to enter judgment in their favor for such interest, the same is denied, and for this reason the motion for the defendants heretofore filed, to enter judgment in their behalf for the sum of $863.23, with interest thereon from October 19, 1912, at the rate of 6 per cent. per annum until paid, is overruled, to which they except."

This part of the judgment was error. Appellees had sued for $2,909.58, and thus laid their damages at a sum far more than sufficient to cover their actual loss at the time of the accrual and interest upon it until the trial. Such being the state of the pleadings, they were entitled to recover interest, reduced in the manner just recited from the judgment below, under their general prayer, without the necessity of specifically praying for it. Magnolia, etc., Corp. v. Chaffee, 192 S. W. 562; Railway Co. v. Jackson, 62 Tex. 214, 4th par. et seq.; Railway Co. v. Greathouse, 82 Tex. 111, 17 S. W. 834, last paragraph; Railway Co. v. Addison, 96 Tex. 64, 3d par., 70 S. W. 200; W. U. Tel. Co. v. Garner, 83 S. W. 434; Erie City Iron Works v. Noble, 58 Tex. Civ. App. 245, 124 S. W. 174, 3d par.

The trial court's judgment will therefore, be so reformed as to give appellee judgment for the sum of $863.23, with interest thereon from October 19, 1912, at the rate of 6 per cent. per annum until paid, instead of for $836.31, with interest thereon at the rate of 6 per cent. per annum from May 12, 1916, until paid, and as thus reformed, will be affirmed.

Reformed and affirmed.