S. M. JOHNSON ET AL. v. JOHN LYFORD.

No. 747.

1. **Briefs of Appellants.**—The rules require a statement from the transcript, and reference to the proper page, in support of each proposition. A reference to the transcript merely is not sufficient, and propositions thus submitted will not be considered. The court can not undertake to search the records for the purpose of supplying defects in the briefs.

2. **Bills of Exception.**—Bills of exception were presented to the trial judge, who returned two of them without his approval, stating in writing upon them, as his reasons for not approving them, that the objections made to the admission of the evidence on the trial were not those embodied in the bill. This was a substantial compliance with the requirements of article 1366, Revised Statutes.

3. **Affidavit of Lost Deed.**—When the execution and delivery of a lost deed is sought to be proved by a chain of circumstances, it is not necessary that the affidavit

of the loss of the deed (if an affidavit be required at all) should state that the affiant had seen the deed or had actual knowledge of its existence, or that he had made search for it in every place where the deed might have been.

4. **Clerk's Certificate as Evidence.**—In 1871 the clerk of the District Court was ex-officio custodian of the county records, and his certificate of that date to the effect that there was on record in his office a certain deed from W. to M. of the lands in controversy, was admissible in evidence, the records of the county having been burned in 1874.

5. **Objection to Evidence Must be Made in the Court Below.**—A witness in his testimony recited entries from Morgan's land book, a book in which Morgan kept an inventory of all lands owned by him; and objection being made that the book itself was the best evidence, it was produced, and its entries read in evidence, without objection, to show that during his life-time Morgan claimed to be the owner of the land in controversy. Objection being now made that the book was not admissible evidence for that purpose, it is *Held*, that it is too late to make the objection, it not having been made below.

6. **Secondary Evidence of Title by Lost Deed.**—See this case for evidence of facts and circumstances held to authorize a finding of title in a remote grantor in plaintiff's chain of title, under a lost deed, although no witness proved the contents of the deed or testified to having seen or read it, or proved its execution.

7. **Innocent Purchaser.**—Defendants knew before they purchased the land that plaintiff's chain of title, except the lost deed, was all on record in Liberty County, and the price paid by them was greatly less than the market value of the land. They can not be held to be innocent purchasers.

8. **Outstanding Title.**—Although the plaintiff's evidence showed outstanding title in a Masonic lodge for twelve acres of the league sued for, and in P. for ten acres, if the maxim, "de minibus non curat lex," does not answer this objection, it was not made in the lower court, nor were the outstanding titles put in evidence by the defendants under their plea of not guilty, and the judgment, if erroneous, does not injure them.

APPEAL from Liberty. Tried below before Hon. L. B. HIGHTOWER.

*Broocks, Greer & Broocks, S. M. Johnson,* and *Lanier & Kirby,* for appellants.—1. The court erred in holding that plaintiff had shown title in himself to the league of land in controversy: (1) Because there was no direct and positive evidence of the execution and delivery of a deed from Jordan West, the original grantee, to James Morgan, plaintiff thereby failing to connect himself with sovereignty of the soil. (2) The circumstances were insufficient in themselves to raise a reasonable presumption that a deed from Jordan West to James Morgan had ever been executed and delivered, in that there was no proof by any witness to the effect that he or they had ever seen any such deed. (3) Because, as to the defendants John H. Broocks, Jr., and I. D. Polk, the evidence establishes they were innocent purchasers.

2. The court erred in permitting plaintiff to read, over objection of defendants, the affidavit of John Lyford, plaintiff, in that the same was insufficient as proof of a lost deed, because the affiant does not state or show that he ever saw or had actual knowledge of the existence of said deed. Schiffler v. Morelle, 68 Texas, 386; Bounds v. Little, 75 Texas, 320; Dunn v. Choate, 4 Texas, 14; Vandergriff v. Piercy, 59 Texas, 372; 60 Texas, 691.

3.  The court erred in failing, refusing, and neglecting to make out and sign and file among the papers in this cause, after himself and counsel had failed to agree, such a bill of exceptions as would have, in his opinion, presented the ruling of the court in that behalf as it actually occurred.  Sayles' Civ. Stats., art. 1366; Lanier v. Perryman, 59 Texas, 104.

4.  The court erred in admitting the certificate of George Ricks, clerk of the District Court, as said certificate was not admissible for any purpose, and it appears that the court considered same.

*Ford & McComb*, for appellee.—1.  The execution and delivery of a deed which had been lost or destroyed may be proved by circumstantial evidence.  If the facts and circumstances in evidence satisfy the mind of the court trying the case that the lost deed once existed, that is all that is necessary to warrant it in finding in favor of the existence of such a deed.  Bounds v. Little, 75 Texas, 320; Allen v. Read, 66 Texas, 19.

2.  Appellants Broocks and Polk were not innocent purchasers for for value.  Littleton v. Giddings, 47 Texas, 115; Hawley v. Bullock, 29 Texas, 221.

3.  The deed records of Liberty County having been destroyed by fire, the certificate of George Ricks, clerk of the District Court of Liberty County, made long prior to the burning of said records, showing that there was on record in his office a conveyance from Jordan West to James Morgan for his, Jordan West's, league of land in said county, was admissible in connection with the other evidence to prove the existence of such a deed.  In 1871 the district clerk was the recorder of deeds, and the custodian of the deed records; he was therefore the proper officer to make such certificate.

4.  Where the indorsement of the trial judge on the bills of exceptions presented shows that no objection or exception was made, as claimed in the bill, or where his indorsement on the bill presented shows what objection was made, then it is not necessary that he should prepare and file a separate bill.

PLEASANTS, ASSOCIATE JUSTICE.—Appellee sued to recover the Jordan West league of land, situated in Liberty County.  He deraigned title from the grantee himself, showing a continuous chain of written conveyances, with one missing link—from the State to himself—the missing link being conveyance from the grantee to James Morgan; and this link the plaintiff undertook to establish by circumstantial evidence.  The appellants, with two exceptions, deraigned title from a portion of the heirs of the grantee, and pleaded not guilty, and also averred, that they were purchasers for value without notice of plaintiff's claim of title through sale from the grantee.  Two of the appellants intervened, claiming an undivided interest in the land by inheritance from the grantee.  Upon trial of the case by the judge of the court, without the

intervention of a jury, judgment was rendered for the plaintiff; and from that judgment both the defendants and the intervenors have appealed to this court.

The appellants in the preparation of their brief have not observed Rule 31 of this court. A reference to the transcript merely is not a compliance with that rule. The rule requires both a statement and a reference to the proper page of the transcript for verification of the statement, which, under the rule, must follow every proposition, should the statement be questioned by the appellee. The brief of appellants in this case contains twelve assignments, with as many propositions, and but two statements from the record in explanation and in support of the propositions submitted. When counsel fail to observe this rule, they must excuse us if we fail to consider or discuss the proposition they submit unsupported by appropriate statements from the proceedings in the cause. We can not undertake to search the record for the purpose of supplying defects in the brief; and we shall in this opinion not notice the various propositions submitted under the twelve assignments of error, further than may be necessary to answer what we consider to be the principal objections urged by appellants to the judgment, and to make an intelligible disposition of the appeal.

The fifth assignment of error is as follows: "The court erred in failing, refusing, and neglecting to make out and sign and file among the papers in this cause, after himself and counsel had failed to agree, such a bill of exceptions as would have, in his opinion, presented the ruling of the court in that behalf as it actually occurred."

This assignment of error arraigns the trial judge for an alleged violation of duty imposed upon him by article 1366 of the Revised Statutes, and in support of this assignment, which we suppose is submitted as a proposition, counsel cites Lanier v. Perryman. Upon the trial of the cause, the appellants presented four bills of exceptions to the judge of the court for his approval. The first was approved without qualification, the second was approved with qualification by the judge written above his signature, and the third and fourth bills were returned by the judge to the counsel who presented them, without approval of the judge, with his reasons for not approving them indorsed on each bill; and these bills, with the qualification and reasons given by the judge on them, constitute parts of the record of the case. While the action of the judge may not be a literal compliance with the terms of the statutes, we think it was a substantial compliance therewith, and gives no ground of complaint in this court. If the appellants desired a bill to be prepared by the court, they should have made demands for one, and if the demand was refused, appellants should have excepted. The contention that the appellants were, by the failure of the judge to make out bills of exception, deprived of the privilege of controverting, under the provisions of article 1367, the question whether or not the bills prepared by them and rejected and qualified by the judge did correctly embody the exceptions made by the defendants to

the admission of the evidence objected to, is not, we think, well founded. The qualification attached to one of the bills, and the reasons for rejecting the other two, and written upon the bills, show clearly the matters upon which the court, and the counsel differed. The objections which appellants urge to the judgment may be condensed under three heads: 1. The court admitted, and considered in determining the issues between the litigants, hearsay and other illegal evidence. 2. That the evidence does not sustain the conclusion of the judge, that a deed of conveyance for the Jordan West league of land was executed by the grantee to James Morgan. 3. That the evidence showed the defendants to be innocent purchasers.

Under the first of these heads, it is objected, that there was error in admitting the affidavit of the plaintiff of the loss of the deed from Jordan West to James Morgan, because (1) the affiant does not state that he ever saw such deed, or had actual knowledge of its existence, and because there was no direct evidence from any one that such deed ever existed; and (2) the affiant does not aver that search had been made in every place where the deed might have been. Whether the case is one in which such an affidavit is required or permitted need not be determined, but there was no error in disallowing these objections to its admission. If an affiant, who proposes to establish by circumstantial evidence the execution of a lost instrument, must first swear that he or some one else had seen the deed, or had actual knowledge of its existence, such requirement would limit and restrict the rule of evidence, now well established, that the execution and delivery of a deed may be shown by a train of circumstances, to cases in which a deed purporting to be such an one as that which it is proposed to establish, is first shown by direct or positive evidence to have once existed. We do not understand the rule to be restricted to such cases. Under this head it is further objected, that the court erred in admitting the certificate of George Ricks, clerk of the District Court of Liberty County, bearing date January 5, 1871, to the effect, that there was on record in his office a deed from West to Morgan for the land in controversy, because the certificate is as to what the records of the District Court clerk's office contain, and not what the records of the County Court contain. The answer to this objection is, that in 1871 the clerk of the District Court was ex-officio the custodian of the county records. The evidence showed, that the county records of Liberty County were destroyed by fire in 1874; there was no error in admitting the certificate. Bounds v. Little, 75 Texas, 316; Allen v. Read, 66 Texas, 19.

The appellants urge under the head of illegal evidence, that the court erred in admitting in evidence, and considering, entries in the land book of James Morgan. This book was prepared in the life-time of James Morgan, under his supervision, and was shown to the witness Gillett by Morgan, and was told that it contained an inventory of all the lands owned by Morgan. Gillett was an executor of the will of Morgan, and this book, after the death of Morgan, came into Gillett's

hands, and among the land inventories was the Jordan West league. Whether under the circumstances the entries in this book were admissible to show claim of title to the land by Morgan need not be determined; it is sufficient to say, the rejected bills of exceptions show by the indorsements made by the judge of the court, that the appellants made no objection to the admission of these entries in evidence; that objection was made to that portion of the deposition of the witness Gillett which cited these entries, on the ground that the deposition was not the best evidence of such entries; that the book itself should be produced; and when the book was offered no objection was made to it. Objections to the admission of evidence in this court on grounds which were not presented to the trial court can not be considered.

As to the second objection, that the circumstances established by the evidence are insufficient to sustain the finding of the court that the Jordan West league was conveyed by the grantee to James Morgan, a recital of some of the evidence upon this issue will, we think, show that the finding of the court is fully supported.   The land was granted in 1835; the grantee died in 1846; he and his family resided in Liberty County; his wife survived him.   The grantee had no other grant of land than this league in that county.

William West, a son of the grantee, Jordan West, 60 years old at the time he testified, said that it was understood by himself, his mother, and the family, that his father sold the land in his life-time to James Morgan, and that his father, in coming from Morgan's house to his own, dropped a portion of the purchase money in the bay, while crossing the same on his way home; that he knew James Morgan; had seen him at his father's house several times; that on one occasion Morgan endeavored to obtain from Mrs. West, witness' mother, a deed of conveyance for what the witness called his mother's "dowry" in the West league, and she refused to make the conveyance, and declared she never would; that witness had never paid taxes on any part of the land, and that his impression was, that none of his father's children had done so; that he had never asserted title to any part of the land until he made deed to defendants, Polk and Broocks, in 1893; and before he made the trade with them, he told them, or told Polk, who negotiated the trade, that it was understood by him and his father's family that the league of land was sold by him to James Morgan, and he refused to execute a deed of warranty unless they, Polk and Broocks, would give him a writing, by which they agreed, that if their title to the land failed they would release him from this warranty, and that they did execute such an agreement with him when he made deed to them.   There is a conflict between this witness and the defendant Polk and the witness S. M. Johnson, who testified for appellants, as to what was said by the witness West at the time he sold to Polk and Broocks.   Johnson says, that West said there was a rumor that James Morgan had some kind of a claim to the land, but that his mother had always told him his father never sold the land; that he

knew of Morgan's claim, and that some deeds were upon record, and that the title would have to be cleared up before the land could be sold; but that he knew of no fact to cause him to believe that Morgan had a valid title to the land. Johnson wrote to Broocks and Polk, who were at Beaumont, after his interview with West, to come up to Liberty, as he had a bargain for them; and Polk came up that night, and they examined the assessment rolls and the deed register, and the next day Polk closed the trade for himself and Brooks for the land. Polk's testimony is, that he has no recollection of hearing that Morgan or any one else claimed the land; but he admits that he had an abstract of land titles for Liberty County, and he knew that the several deeds conveying the land in dispute, and under which plaintiff claims the land, were recorded in the deed books for that county, and the statement of facts shows that these deeds were properly acknowledged and duly registered. It further appears from the certificate of the Comptroller, put in evidence by plaintiff, that the archives of his office show that in 1839 and in 1870, and in every year between those dates, except three, the Jordan West league of land for Liberty County was assessed in the name of James Morgan, and in the three years in which it is not so assessed, the transcript from the archives certified to by the Comptroller shows no assessment by any one; and from 1839 to 1892 these archives show rendition for taxes of this land, except the year 1873, in the name of James Morgan and those claiming under him. In the year 1873, 333 acres of the league is rendered in the name of one Dugart, of Chambers County. The witness Simmons, who testified for plaintiff, said that he had lived for twenty years in Liberty County, and knew the land well, and that it was known as the Morgan land; that he knew William West, and several of the other heirs of John West; that they lived very near to the league of land for many years, and that he never heard one of them set up any claim whatever to the land, but on the contrary, he had frequently heard from these heirs that the land belonged to some one in the North, and that the first time he ever heard these heirs set up claim to this land was sometime last year (1893 or 1892). In 1870, H. F. Gillett and George Ball, as independent executors of James Morgan's will, conveyed the league of land in consideration of some $2856 to Frank Hamman. In 1875, Frank Hamman conveyed to Joseph N. Walker and D. H. Startsman; in 1877, Walker conveyed to plaintiff two-thirds of the league in consideration of $700 and other considerations; and in 1878 Startsman conveyed the other third to plaintiff for $3000. The witness Gillett testified, that he thought he delivered to Hamman, when he sold the land to him, the deed from Jordan West to James Morgan; that at the time of the sale no question was raised as to Morgan's title to the land; that it was his custom, when he sold lands belonging to his testator and estate, to deliver the purchaser all the title deeds; that his testator owned many leagues of land in the State; that all of the titles which were in the possession of his testator at the

time of his death came into the witness' possession as one of the executors of the will; that Mr. Ball was coexecutor with him, but that witness had immediate control of the property of the estate, and that he negotiated the sale to Hamman; that they came from Harris County, the residence of the witness, to Galveston, and the deed was executed by himself and Mr. Ball, and was delivered to Hamman; and to the best of his recollection he delivered to him at the same time the deed from John West to James Morgan; that had he not delivered such deed, the fact would have impressed itself upon his memory, and that he had no such impression. The land book, to which reference has been already made, and to which book Morgan called the attention of this witness not very long before Morgan's death, contained two entries, showing purchase of the league, in two parcels, at short intervals, and prior to 1839. Jordan West died, as before stated, in 1846, according to the testimony of his son William West, but the defendant Polk testifies, that William told him at the time of the sale to him by West that Jordan West was killed in 1840. James Morgan died in 1866 or 1867, at Morgan's Point, in Harris County; an abstract of title certified to by the custodian of the land records of Liberty County, in 1871, showed a conveyance from Jordan West to James Morgan.

The foregoing facts, adduced upon the trial of this cause, notwithstanding that no witness swears positively that he ever saw the original deed alleged to have been executed by West to Morgan, are sufficient, in our judgment, to sustain the finding of the trial judge on the issue, whether such a deed was or was not executed; and we are further of the opinion that the facts, in connection with the admissions of both the defendant Polk, and of his witness Johnson, that they knew before the purchase from West by Polk and Broocks, and before the contract between Johnson and certain of the heirs of Jordan West was made, that the deeds above recited, and under which the plaintiff claims title were on record in Liberty County, coupled with the further fact, that the price paid by defendants for the land was greatly less than its market value, fully sustains the judge in his finding that defendants were not innocent purchasers. The uncontradicted evidence is, that the market value of the league was from $1.50 to $2 per acre at the time the defendants purchased. Defendants paid $350 for two-sixths of the league, and paid and promised $1000 for three-sixths thereof.

The appellants object to the judgment, because it gives the entire league to the plaintiff, while the evidence of plaintiff shows outstanding title to twelve acres of the league in William West and others, trustees, for a Masonic lodge; and title to ten acres in one Proctor; both these fractions of the league were conveyed by plaintiff's vendor years ago. If the maxim, "de minimis non curat lex," is not a sufficient reply to this objection, then we have to say, that the objection does not seem to have been made in the lower court, and it therefore will not be heard here; and further, that these outstanding titles were

not put in evidence by appellants under the plea of not guilty, and if the judgment is erroneous, it does no injury to them.

The judgment of the lower court we believe to be a righteous one, and it will be affirmed.

*Affirmed.*

Delivered December 13, 1894.