## T. A. JOHNSON ET AL. v. F. HULETT.

Decided May 12, 1909.

**1.—Contract—Pleading—Quantum Meruit—Reconvention.**

When, in an action for rent, the plaintiff declared upon a written contract he could not recover on an implied contract arising from the use of the premises, nor upon a verbal promise to pay rent; but when the defendant sues in reconvention for damages for the seizure of his property by distress warrant and admits in his answer that he used the premises during a part of the term, in arriving at the amount of damages that might be assessed against the plaintiff for suing out the distress warrant, the amount admitted by the defendant to

be due or which would legally arise as matter of law from the allegations of the answer, should be deducted from any damages awarded to the defendant.

**2.—Landlord and Tennant—Holding over by Tenant—Liability.**

A tenant renting premises by the month is liable for the rent of an entire month when he holds over for a part of the month.

**3.—Same—Agency—Evidence.**

Evidence considered, and held insufficient to show that certain parties alleged to be the agents of defendant's landlord were such agents for the purpose of making or modifying a rental contract.

**4.—Same—Lien—Hotel Furniture.**

A landlord has a lien upon the furniture in a hotel to secure him in the rent due upon the hotel, and this, for the entire term for which the lease was made.

**5.—Same—Distress Warrant—Damages.**

A landlord would be liable to his tenant in damages for suing out a distress warrant to collect more rent than was due or would become due, but would not be liable for levying on more of the tenant's property than was absolutely necessary to secure the rent.

**6.—Same—Measure of Damages.**

The measure of damage for the illegal and unjust levy of a distress warrant is the loss to the tenant arising from the deprivation of the use of the property seized, and deterioration, if any, in value of the property by reason of the levy.

**7.—Appeal—Defective Brief.**

When assignments of error relate to separate and distinct questions they should not be grouped in the brief of appellant, and references to the record can not take the place of statements under the assignments.

Appeal from the District Court of Potter County. Tried below before Hon. J. N. Browning.

*Ira Webster, Clifford Braly* and *Allen & Dohoney,* for appellants.— The court erred in failing to render judgment for plaintiffs foreclosing the landlord's lien upon the property shown by the officer's return on the distress warrant, because the undisputed evidence shows that the relation of landlord and tenant existed between plaintiffs and defendant, that defendant was indebted to plaintiffs for rent, which was then due, and that said property had been on the rented premises and was subject to such lien and that defendant was removing the same from the rented premises. Rev. Civ. Stats. of Texas, art. 3240 et seq.; Marsalis & Co. v. Pitman, 68 Texas, 624; Livingston v. Wright, 68 Texas, 706; Racke v. Anheuser-Busch Brewing Ass'n, 42 S. W., 774; Randall v. Rosenthall, 27 S. W., 906; Reddick v. Elliott, 28 S. W., 44; Massie v. State National Bank, 32 S. W., 797; Bateman & Bro. v. Maddox, 86 Texas, 547; 18 Am. & Eng. Ency. of Law, p. 304; Rev. Civ. Stats., arts. 3251 and 3252.

*Reeder, Graham & Williams,* for appellee.

FLY, ASSOCIATE JUSTICE.—The appellants, T. A. Johnson and W. T. Scott, sued appellee, alleging that they owned the Elmhirst Hotel in Amarillo, Texas; that on or about October 2, 1907, they entered into a written lease contract with appellee of said hotel for a term of

nine months at a rental of $300 a month; that appellee owned the furniture in the hotel upon which appellants obtained a statutory lien by virtue of said lease. That appellee occupied the hotel from October 1 to November 8, 1907, at which time he breached his contract and abandoned the hotel and removed a part of the furniture therefrom with the design of moving it out of the county; that appellants obtained a distress warrant which was levied on certain of the furniture. Appellants prayed for judgment for $1,800 and for the foreclosure of their lien.

Appellee answered that he had refused to sign the written contract when presented to him by Currie & Dohoney, agents of appellants, but agreed with them to pay $300 for the month of October, 1907; that in that month he sold his furniture to one David Long for $1,000, in consideration that he would make satisfactory arrangements for the lease of the property, and that he went off and returned, bringing the contract herein sued on, and in company with one Spann, who was acting for Currie & Dohoney, requested that appellee sign said contract and transfer it to Long, and appellee signed the contract with the understanding that he was not to be bound, but as a means of transferring it to Long. He alleged that he paid the rent for October with $100 in cash and a check given by Long for $200. He prayed for damages for the levying of the distress warrant on his furniture. The cause was tried without a jury and judgment was rendered in favor of appellants for $200 rent for October and $80 for eight days in November, 1907, and for appellee for $740, less a credit of $280 found to be due for rent.

It appears from the statement of facts that appellants lived in Paris, Texas, and owned the Elmhirst Hotel in Amarillo, which they leased to appellee for $210 a month. The lease expired on October 1, 1907, and appellants demanded $300 a month for the next nine months, and prepared and sent a written contract of lease to Currie & Dohoney, upon receiving the latter's message that appellee would lease on their terms. They signed the contract before they sent it, and Dohoney & Currie delivered it to appellee. Appellee said he wanted the furniture of his daughter excepted from the lien reserved in the contract, and Currie & Dohoney sent it back to appellants for their action. That property was excepted by appellants, and the contract returned and placed in the hands of appellee for his signature. Appellee admitted in his testimony that he made but one objection to the contract, and that was in regard to his daughter's furniture, and that objection was made after he had fully considered the contract. Prior to October Currie & Dohoney had no dealings with appellee for appellants. Appellee admitted that fact. The lease money was never paid by appellee to Currie & Dohoney. He did not deny that the contract was always sent back to appellants when any change was desired in it, and he did not swear to any act of agency on their part except to bring the contract signed by appellants to him for his signature. The agency was denied by Currie & Dohoney and by appellants. Appellee admitted that he agreed to pay $300 for October, and that he paid only $100 of the sum. He swore that he signed the contract of lease in the latter part of October on the representation of Spann, a

stenographer in the office of Currie & Dohoney, that he should do so in order to transfer the lease to one Long, who had contracted to buy his furniture and take the lease off his hands. It was not shown that appellants agreed to the transfer of the lease, and when sent to them they promptly repudiated it. At the time the distress warrant was obtained and executed appellee had abandoned the hotel and sold part of the furniture. All of the testimony showed that Currie & Dohoney would not assume authority to rent the hotel or to make any changes in the lease contract, but always stated that they would communicate with appellants, and they always did so. Appellee signed the contract which provided for a lease of the hotel for nine months from October 1, 1907, at the monthly rate of $300. He thus narrates the circumstances under which he signed the contract: "The first time I saw this man Long was in the afternoon; I do not know whether it was the 27th or 28th of October. It was the latter part of October some time. He was not stopping with me, but he was in there and commenced talking about the business, and finally asked me if my furniture was not for sale, and he wanted to know its price and I gave it to him. I said: 'You can go to Currie & Dohoney, and they represent the owners of the building, and see what kind of a deal you can make with them.' He wanted to buy my furniture and lease the hotel. I did not have anything to do with the leasing of it and referred him to Currie & Dohoney. He left the hotel and returned again with Mr. Spann and the contract. I did not know Mr. Spann; I would not know him now. He was the young man employed by Mr. Dohoney, or the firm of Currie & Dohoney. They had the contract which had been presented to me on several occasions, and also a bill of sale of the furniture and some sub-contract. I did not pay much attention, because I supposed the thing was sold, and I declined to sign it. That was the same contract that I had previously declined to sign. They also brought a bill of sale to the furniture from myself to Mr. Long. That was all the papers I remember of. There was some paper with reference to Mr. Long's taking over the hotel. The paper, I suppose, would be called the bill of sale. It was a paper gotten up by Mr. Long. I can not tell you what became of those papers. I signed that, and I declined to sign the contract, stating at the time that Mr. Long could sign that —that I had sold out and that I would let him sign it. The young man said it would be the same thing for me to sign it and transfer it to Mr. Long. He said that it would make no difference, and would simply save the writing up of another contract, and I then signed the other paper. The other paper was the paper Mr. Long had gotten up —that bill of sale of the furniture; I signed that first, and after the young man explained to me I signed the contract and the transfer of the contract over to Long. Then Long wrote me a check for $200. That was a payment on the furniture. He still owed me $800 on it. I can not say positively that these papers were attached together; that is, the contract and the transfer of it. After I signed those papers Mr. Long left the house."

If Currie & Dohoney were the agents of appellants in procuring the signature of appellee to the contract of lease, and if he was induced to sign the contract by the agents of appellants under their represen-

tation that it was to be done only as a basis to transfer the lease to Long, it would not be a contract binding upon appellee, and if the transfer of the lease was sent with the lease contract to appellants they would not be authorized to accept the lease contract and reject the accompanying transfer. Under such circumstances the vitality of one would be dependent upon the vitality of the other. The case presented was made by the evidence of appellee alone, but was accepted by the trial court although contradicted by the testimony of appellee's wife, as well as the other two witnesses present.

If, as testified by Long and Spann and Mrs. Hulett, no inducements were held out or representations made by the employe of Currie & Dohoney to cause appellee to sign the contract, he would be bound by it although he may have intended to transfer the lease at once to Long. It would be his contract, and he could not shift it to some one else without the written consent of the lessors, as provided in the contract, and he would be liable for the rent for the entire nine months.

Appellants declared on an express written contract, and could not recover for rent on an implied contract arising from use of the premises, nor from a verbal promise to pay rent; but in his answer appellee admitted that he used the premises during the month of October and part of November, and in arriving at the amount of damages that might be assessed against appellants for illegally and unjustly suing out the distress warrant, the amounts admitted to be due, or which would legally arise, as a matter of law, from the allegations of the answer, should be deducted from any damages sustained. In this connection it may be said that appellee would not only be liable for the balance of $200 for October, but for the sum of $300 for the month of November, by reason of his holding over for a part of that month. He was renting by the month, and when he held the premises for part of the month he became liable for the rent of the whole month. He knew that the rent had been raised to $300 a month, and admitted that he agreed to pay that sum for October, and if he held over in November, then he would be liable for the whole month at $300, even though it should be found that he had not bound himself by the written contract. (City of San Antonio v. French, 80 Texas, 575; Bateman v. Maddox, 86 Texas, 546; Mahon v. Cotton, 13 Texas Civ. App., 239; Racke v. Anheuser-Busch Brewing Ass'n, 17 Texas Civ. App., 167.)

If appellants agreed to allow appellee to remain in the hotel for a part of November without payment of rent, as was claimed by him, he would not be liable for the month of November. But as it was claimed that the agreement for him to remain for part of the month was made by agents of appellants, it would be necessary to prove that the agents had the authority to make such an agreement. The evidence in the record utterly fails to show any such authority on the part of the agents, and it was clearly not within the apparent scope of the authority of agents employed merely to get appellee's signature to a written contract.

The statutes of Texas give all persons leasing or renting any residence, store house or other building, a preference lien upon all the

property of the tenant in such residence, store house or other building, for the payment of rents due and that may become due, which shall continue and be in force so long as the tenant shall occupy the rented premises, and for one month thereafter. (Article 3251, Revised Statutes.) The language of the statute is broad enough to cover the furniture in a hotel, as has been held by the Supreme Court. (Biesenbach v. Key, 63 Texas, 79.) The lien given by the statute would extend to the furniture for the rent of the entire time for which the lease was made. (Marsalis v. Pitman, 68 Texas, 624.) If any rent was due or to become due for the hotel property, then appellants had a lien on the furniture in the hotel to secure that rent. When that rent became due, or the tenant was brought to remove himself or his property from the hotel, appellants were authorized to sue out a distress warrant against the property of appellee, and there could be no basis for the recovery of damages against appellants for suing out the writ, unless the writ was sued out for more than was due or to become due for rents. It has been held that if there is an excess claimed in the application for a distress warrant over the real amount of rent due or to become due, the warrant for distress would be illegally and unjustly sued out to the amount of the excess, and damages would be allowed the lessee or renter. McKee v. Sims, 92 Texas, 51.

Under authority of the decision of the Supreme Court in the case last cited, the landlord would be liable for damages if he claimed more rent than was due or to become due, but would not be liable for damages for levying on more of the tenant's goods than was absolutely necessary to secure the rents. Now, if appellants had placed a count in their petition declaring on a claim for rents for a balance on October and all of November, on an implied contract, no damages could be recovered by reason of a levy on more furniture than was necessary to secure the rents, because they had a lien on the whole of the furniture for any rent that might be due or to become due. Of course, if the written contract was not signed unconditionally by appellee, appellants would be liable for such damages as might have resulted by the levy of the distress warrant, because appellee would not, under the pleadings, be liable for any rents.

The measure of damages for the illegal and unjust levy of a distress warrant would be the loss arising from the deprivation of the use of the property seized, and deterioration, if any, in the value of the property by reason of the levy. This would not include what appellee would have made in a boarding-house in Fort Worth with the furniture, for that would include the use of the house and other things, but merely what the use of the furniture would have been worth to him of itself. If appellee rented, or could have rented, other furniture, the amount paid for the use of it, together with any depreciation in value of the property by reason of the levy would be the proper measure of damages. It does not seem possible that the use of furniture, which appellee valued at $800, could have been worth almost its full value in seven months, as found by the trial court.

The first, second, seventh and ninth assignments of error are grouped. One is that a general demurrer should have been sustained, another that a special exception should have been sustained, and the

other two that evidence on different subjects should not have been admitted. The questions should have been separately presented with separate propositions and separate statements. References to the record can not take the place of statements. This court is under no obligation to consider the *pot-pourri* of subjects contained in the assignments presented without regard to rules; but in view of another trial, we will say that the general and special demurrers were properly overruled, that appellee should not be permitted to prove conversations had with Long or Gouldy, no agent of appellants being present.

The letters were properly admitted in evidence. Dohoney swore that he sent them to appellants. His firm were special agents of appellants to procure the signature of appellee to the contract.

The testimony utterly failed to show any authority upon the part of Currie & Dohoney to give permission to appellee to occupy the hotel without paying for it, and all the testimony on that subject should have been excluded.

Gouldy should not have been permitted to testify to conversations with appellee, neither appellants nor any of their agents being present. The conversation between Gouldy and appellee as to the understanding of the latter about the lease contract was self-serving, and should have been excluded.

The witness Green should not have been permitted to testify as to conversations with appellee and conversations and negotiations had by him with Currie & Dohoney, after appellee had signed the contract and had left the hotel. Elementary rules would brand such testimony as illegal and without any relevancy to the issues.

There is no merit in the cross-assignments of error. The fact that appellee put a check for $200, given to him by Long, in a bank with directions to credit appellants with the proceeds, was not a payment of that sum when the check was afterwards dishonored.

The judgment is reversed and the cause remanded to be tried in conformity with this opinion.

*Reversed and remanded.*

Application by appellee for writ of error dismissed for want of jurisdiction.