## GLOVER v. HOUSTON BELT & TERMINAL RY. CO.

(Court of Civil Appeals of Texas. El Paso. Feb. 13, 1914. On Rehearing, March 5, 1914.)

1. APPEAL AND ERROR (§ 766*)—AMENDED BRIEF—RULE OF COURT.

An amended brief, undertaking to re-present and re-brief various assignments of error, was not such an amendment as is permitted by rule 38 for Courts of Civil Appeals (142 S. W. xiii), providing that a brief may be amended by citation of additional authorities; and hence only the argument therein would be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3101, 3126; Dec. Dig. § 766.*]

2. TRIAL (§ 260*)—REQUESTED INSTRUCTIONS —GIVEN INSTRUCTIONS.

A requested charge was properly refused, where the issue presented thereby was sufficiently covered by the court's main charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

3. TRIAL (§ 240*)—ARGUMENTATIVE INSTRUCTION.

An argumentative instruction was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 561; Dec. Dig. § 240.*]

4. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

A requested charge upon the weight of the evidence was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

5. TRIAL (§ 295*)—CONSTRUCTION OF CHARGE.

A charge is to be construed as a whole, and, when the right of recovery on one issue is submitted generally, its omission from another paragraph presents no reversible error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

6. TRIAL (§ 229*) — INSTRUCTIONS — SUPPLEMENTED BY OTHER INSTRUCTIONS.

Where contributory negligence is defined in one paragraph of a charge, the definition need not be repeated in another.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 513; Dec. Dig. § 229.*]

7. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS AND PROPOSITIONS—MULTIFARIOUSNESS.

A proposition subjoined to an assignment, raising and submitting two distinct propositions of law, was multifarious, and not entitled to consideration.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

8. MASTER AND SERVANT (§ 293*)—ACTIONS FOR INJURIES—INSTRUCTIONS—NEGLIGENCE OF FOREMAN.

In a servant's action for personal injuries, a charge affirmatively presenting defendant's theory, based on the foreman's negligence and in no way limiting plaintiff's right of recovery, was not ground for reversal because it failed to define particularly the foreman's duties.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

9. APPEAL AND ERROR (§ 743*)—ASSIGNMENT OF ERROR—PROPOSITION AND STATEMENT— RULE OF COURT.

Under rule 31 for Courts of Civil Appeals (142 S. W. xiii), providing that to each proposition there shall be subjoined a brief statement of such proceedings, or part thereof, contained in the record, as will be necessary to explain and support the proposition, with a reference to the pages of the record, it was not sufficient merely to refer the court to the parts and pages of the record relied upon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2999, 3011; Dec. Dig. § 743.*]

10. APPEAL AND ERROR (§ 742*)—PROPOSITION—NECESSITY OF STATEMENT.

A proposition unsupported by a proper statement will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

11. APPEAL AND ERROR (§ 882*)—PARTY ENTITLED TO ALLEGE ERROR—PARTY INVITING ERROR.

A party inviting error is estopped to complain thereof.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

12. APPEAL AND ERROR (§ 742*)—ASSIGNMENT —PROPOSITION.

Upon an assignment, complaining of the court's charge directing a verdict for defendant, the consideration of the assignment is limited to the supporting proposition.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

13. MASTER AND SERVANT (§ 180*)—MASTER'S LIABILITY—NEGLIGENCE OF FELLOW SERVANT—"OPERATING."

Under Rev. Civ. St. 1911, art. 6640, making a railroad liable for injuries to its servants engaged in operating its cars, by reason of the negligence of any other servant, regardless of the common-law rule as to nonliability for negligence of fellow servants, the word "operation" comprehends something more than the mere running of cars and trains from one point to another, and may apply to the stationary "operation" of a car; and hence plaintiff, employed with his fellow servants in unloading iron crossings from a car which was moved about on the switch by a wrecking car having its own motive power and machinery operating the hoist, was engaged in the "operation" of a car, so that he might recover for injuries.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 359–361, 363–368; Dec. Dig. § 180.*

For other definitions, see Words and Phrases, vol. 6, p. 4992; vol. 8, p. 7738.]

14. TRIAL (§ 252*)—INSTRUCTIONS—EVIDENCE AND ISSUES.

A charge not raised by the evidence should not be given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

15. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—CHARGE NOT APPLICABLE TO EVIDENCE.

Harmless error in the giving of a charge affords no ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

16. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS—GROUPING.

The grouping of assignments which are not germane was improper, for which reason they will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

17. TRIAL (§ 112*)—TIME FOR ARGUMENT.

In a servant's action for personal injuries, the court's action in limiting plaintiff's counsel to 1 hour and 15 minutes for argument, in the absence of any showing that that was not suffi-

cient time, or that the limitation was harmful, was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 273, 274; Dec. Dig. § 112.*]

On Rehearing:

18. APPEAL AND ERROR (§ 719*)—ERRORS NOT ASSIGNED—REVERSAL.

It is not within the province of this court to reverse cases for errors not assigned and not presented, unless they be fundamental in their nature, or of such character otherwise that they should be passed upon without assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. § 719.*]

Error to District Court, Harris County; Wm. Masterson, Judge.

Action by W. J. Glover against the Houston Belt & Terminal Railway Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Gibson & Wander, of Houston, and McBroom & Scott, of El Paso, for plaintiff in error. Meachum & King and Andrews, Ball & Streetman, all of Houston, for defendant in error.

HIGGINS, J. This was a suit by William J. Glover against the defendant in error, a corporation operating a railroad in this state, to recover damages resulting from personal injuries alleged to have been sustained on April 21, 1910, while in the employ of defendant in error.

At the time of the accident upon which this suit is based, Glover was one of a crew of men engaged in unloading certain metal forms, referred to in the record as crossings or frogs, from a coal car in the railway company yards in Houston, under the direction and control of defendant's foreman, Phillips. A wrecking car was used in unloading the forms. Built upon the wrecking car was a long boom or derrick, from the outer end of which hung a cable and upon the end of the cable was a large hook; chains would be wrapped around the forms, the cable mentioned pulled down and hooked to the chains around the forms. The boom was operated by a steam engine on the wrecking car, and when the hook at end of cable had been attached to chains around forms, upon signal from Phillips, the engineer upon the wrecker would apply the power and lift the forms out of the car; while one of the forms was being thus lifted, it swung towards the side of the car where plaintiff was standing, and he, thinking he was in danger therefrom, leaped from the car, sustaining the injuries complained of. Negligence on the part of defendant was charged in a number of respects not necessary to mention in disposing of the questions presented by this appeal. Upon trial verdict was returned in favor of defendant upon which judgment was rendered, and it is now before this court for review.

[1] After defendant in error had filed its brief in this court, the plaintiff in error filed what is styled a "Written Argument and Supplemental Brief of Plaintiff in Error." We will consider only the argument contained in same. In great part it is an amendment to the original brief filed, undertaking to re-present and re-brief various assignments of error. This is not such an amendment to the original brief as is permitted by rule 38 (142 S. W. xiii), and consideration thereof will be limited as stated. Peck v. Morgan, 156 S. W. 917; Greene, etc., v. Silbert, 158 S. W. 803.

[2] Special charge No. 1 was properly refused, since the issue presented thereby was sufficiently covered in the court's main charge.

[3, 4] Special charge No. 2 was argumentative, and upon the weight of the evidence, and its refusal presents no error.

[5] In the sixth assignment it is complained that the eighth paragraph is erroneous in that it ignored plaintiff's right of recovery, based upon the failure of defendant's foreman, Phillips, to maintain a proper lookout while crossing was being hoisted, and stopping same in time to avoid the injury. The charge is to be construed as a whole, and in the twelfth paragraph, the right of recovery upon this issue was submitted generally, and its omission from the eighth paragraph therefore presents no reversible error.

The seventh assignment attacks the sufficiency and correctness of the thirteenth paragraph of the general charge. It is first objected thereto that it failed to define contributory negligence. There was no necessity that it should have been defined in this particular paragraph, and, since it is elsewhere defined, this criticism is wholly without merit.

[6] The second proposition subjoined to this assignment raises and submits two separate and distinct propositions of law. It is therefore subject to the objection of multifariousness, and is not entitled to be, and will not be, considered. McAllen v. Raphael, 96 S. W. 760; De Hoyes v. Ry. Co., 52 Tex. Civ. App. 543, 115 S. W. 75; Driver v. Wilson, 68 S. W. 290; Wichita, etc., v. Adams, 146 S. W. 271.

[7] The scope and meaning of the third proposition is not clear. As we construe same, it contends that the paragraph of the charge in question is faulty, in that it limited plaintiff's right of recovery unless there was negligence on part of the foreman, Phillips, which caused the injury, and in failing to define the foreman's duties and what would constitute negligence on his part. It would seem that this proposition is likewise subject to objection as being multifarious, but, since we are doubtful whether we grasp its correct interpretation, we will dispose of it upon what we conceive to be the issues presented. The paragraph of the charge here questioned is an affirmative presentation

of defendant's theory, and does not in any wise undertake to limit, and does not limit, the plaintiff's right of recovery as complained of. Failure to define particularly the foreman's duties is not reversible error, and as to the failure to define what would constitute negligence on his part, it is sufficient to say that the court elsewhere gave the usual and proper definition thereof.

[8] The fourth proposition cannot be considered. It is multifarious, and is not supported by such statement as the rules require. Rule 31 (142 S. W. xiii) provides that "to each of said propositions there shall be subjoined a brief statement, in substance, of such proceedings or part thereof, contained in the record, as will be necessary and sufficient to explain and support the proposition, with a reference to the pages of the record." This provision requires the "substance" of the proceedings relied upon as supporting the proposition to be stated, and it is not sufficient to merely refer the court to the parts and pages of the record relied upon. Colorado Canal Co. v. Southwell, 50 Tex. Civ. App. 92, 109 S. W. 435; Walker v. Ry. Co., 54 Tex. Civ. App. 406, 117 S. W. 1020; Ry. Co. v. Lane, 118 S. W. 847; Ry. Co. v. Wafer, 130 S. W. 712; Broussard v. So. Tex. Rice Co., 120 S. W. 587; Kirby Lbr. Co. v. Chambers, 41 Tex. Civ. App. 632, 95 S. W. 607; Johnson v. Lyford, 9 Tex. Civ. App. 85, 29 S. W. 57; Ry. Co. v. Olds, 112 S. W. 787; Johnson v. Hulett, 56 Tex. Civ. App. 11, 120 S. W. 257. A proper observance of this rule will materially aid in the proper consideration and disposition of causes upon appeal, and will be enforced by this court.

[9] The fifth proposition is unsupported by proper statement, and will not be considered.

[10] The error, if any, complained of in the eighth assignment, as presented by the first proposition thereunder, was invited by plaintiff in error, and he is estopped to complain thereof. The second proposition under this assignment will not be considered because it is multifarious.

The tenth assignment is submitted as a proposition. As such it is subject to the same objection, and is not considered.

[11] The eleventh assignment complains of a paragraph of the court's charge directing a verdict for defendant if the jury believed "that plaintiff's injuries, if any, were sustained through the negligence of his coworkers on said car, other than Phillips." In support of this assignment the following proposition of law is urged: "This was against the law. The plaintiff was engaged in operating a car propelled by steam, which was moving from point to point by the force of its own power, unloading metal track crossings and frogs for the construction of switch tracks, and he was within the meaning of article 6640, Civil Statutes, which gives the right of recovery for injuries for negligent acts of fellow servants." In the consideration of this assignment we are, limited to the supporting proposition. Ry. Co. v. Wood, 41 Tex. Civ. App. 226, 92 S. W. 259; Ariola v. Newman, 51 Tex. Civ. App. 617, 113 S. W. 157; Williamson v. Powell, 140 S. W. 359; Ry. Co. v. Drahn, 143 S. W. 357; Ry. Co. v. Brown, 147 S. W. 1177.

[12] The only question, therefore, which we will consider is plaintiff's right to recover for the negligence of his fellow servants under provisions of article 6640, R. S., pretermitting any discussion of liability for the negligence of a fellow servant upon a phase of the case readily apparent but not urged. This statute renders a railway corporation liable for all damages sustained by its servants while engaged in the work of operating its cars by reason of the negligence of any other servant, regardless of the rules of the common law relating to nonliability where the negligent servant and the injured one were fellow servants. It is clear that all of the employés engaged in operating the wrecker and unloading the crossings were fellow servants with each other, except the foreman, Phillips, so the question is reduced to a determination of whether he was injured while engaged in the work of "operating" cars within the meaning of the statute.

The coal car containing the metal crossings was attached to the wrecking car, and on the morning of the accident the two cars were brought by a switch engine to a switch in the yards. The wrecker had an engine on it which furnished the motive power for the machinery of the car, and it also furnished motive power whereby the car itself could be moved from one place to another. After arriving at the switch, the same was thrown by Glover, and he signaled to McGuire, who operated the engine and machinery of the wrecker, and the wrecker by its own power was propelled, together with the coal car, about 1½ blocks, to point where crossings were to be unloaded. The testimony of plaintiff is here quoted as pertinent to the question considered, viz.: "During April of 1910 I was working in the gang with Mr. Phillips; that was the time that I got hurt. On the day that I was hurt I was looking for numbers on the crossings as Mr. Phillips would call them out; he would get them from the blueprint and call them out to me. I was working on the coal car to which we had attached a wrecker. [Counsel hands witness Exhibit ———]. That is the car right there, that is it as it is shown in this picture. I had been working there on that car two days. Mr. Phillips employed me to work there. When he employed me, and the day that we were down there, he told me to pick out the numbers and reach up and keep the boom off those fellows' heads when it came in the car, and pull the slack out of the cable as quick as I could; that was the instructions that he gave me the day that I was hurt; that he wanted to get through by dinner. The picture of the wrecking car which you have here looks like the one that

we were using the day that I was injured; it has a smokestack to it and an appliance by which it can run itself by its own power. I have been on that car when it was run by itself; it can move about as fast as a man can walk, under its own power, I mean. That wrecking car could either pull or push another car; it had a regular coupling like any other car attached to it, and we could attach it to other cars. On the day that I got hurt this wrecking car was attached to a coal car, and a switch engine brought them both to the switch and stopped, and I opened the switch and let the wrecking boss give them a signal to come down where we were unloading; then the switch engine went back to the south yard, I guess; at any rate it left there. After that we commenced unloading those frogs and track crossings on the east side, after I brought them down; I brought them down there about a block and a half, I guess; we crossed Texas avenue and stopped on that side of Texas avenue. What I mean by saying 'brought down' is that I gave the engineer a signal, and they brought them down to where we were unloading the stuff; Mr. McGuire was the man who had charge of that wrecking car; I gave him the signal, and he moved the wrecking car, pushing the coal car down to where we unloaded the frogs and switches, frogs and track crossings. After we moved down a block and a half we commenced to unload those things; we put some on a push car and some of them on the ground. We would back up, when one was on this end. (Counsel hands witness sketch, Exhibit ——, already in evidence.) Say this is the car that has got the wrecking apparatus on it and the engine, and this is the coal car coupled to it. What I mean is, I would get down, uncouple it, and give a signal to back up, and we would pick up a crossing here somewhere, that is, towards the rear of the car, next to the wrecking car. Then when we went to get the next one, I would uncouple. I would do that coupling, and I did it that morning prior to the time I got hurt. I got out to couple and uncouple twice that morning, to my knowing. When I was not engaged in uncoupling and coupling these cars so as to allow the movement of this wrecking car, my duty was to look for another crossing; Mr. Phillips would call out the number; it seems like he picked me out to find the numbers, and told me to find them; then when I found it, and when I called out the numbers, these other boys in the car would put the chain on it. The other boys were Pete McGowan, Charley Mims, and Reddick Edwards. * * * We did not pull out those things by the chain, we used the machinery of the wrecker; that machinery on the wrecker was run by steam. This power on this wrecking engine on the wrecking car could be applied to run that boom machinery, and it could be taken loose from that, the wheels of the car, so as to make it go along like an ordinary locomotive. When I say that we would catch this thing and would snake it out, I mean catch onto the crossing and pull it out from under the other crossings by the cable, that is, by the machinery. Mr. Phillips directed that work; Mr. Phillips was the foreman, and he was sitting in the end of a car with a blueprint; the car was standing south and north, and he was standing in the far end of the coal car from the wrecker; in the end furtherest from the wrecker, in the coal car, and was in position by which he could be seen by the engineer of the wrecker, and the engineer of the wrecker could see him. A person could not stand up where the engineer was and see in the bottom of the coal car, not where the engineer was, he couldn't; you could see the far end of it at the bottom, and I suppose you could see up pretty near halfway, but you could not see all of it, as I have just stated. The engineer would watch for a signal from Mr. Phillips, and when these people would get this thing fastened, the signal would be given and the appliance would pull the crossing out, they would pull it right on out with the hook from the cable, and this crossing that was pulling out, why one crossing was fastened under another crossing, at the time I was hurt, and it flewed out, and I was standing, just looking for another number; I was standing to the west of the side of the car. We were unloading those track crossings and frogs on the east side of the car, and I was on the other side of the car. I disremember now where the men were who were fastening the chain on the crossings. I couldn't really say, because they were scattered all over the car after they had fastened it. When these men had fastened the crossing and they had put the steam to it, why the hook 'flewed' on the chain; that snatched the crossing out, and I heard somebody holler, 'Look out!' and I looked around like that, and the thing was coming, and just about there, and I just put my hand on the car and heaved out, I jumped right out; there was nowhere else for me to go, and if I stayed where I was at the time it would have cut me in two because the point swings over the car, it followed me right out of the car; it was coming pretty fast; I heard it when I hit the ground, and as I was on the ground I looked up and this point was swinging right over my head. I don't know how far it was from the ground to the top of the coal car where I jumped out; the track was dug out about a foot or better, I guess, as near as I can get at it, at that point, but I would say that it was 10 or 11 feet, something like that. After I jumped out and hit the ground I heard a noise right in here, and I grabbed my side; I grabbed my side because it hurt me. [Witness removes his coat, vest, and shirt, and indicates to jury where it is alleged he was injured.] It hurts right around here, there is a knot right there, you see; it feels like something is bulging from there all the time. * * * I said yesterday

that when this thing got fastened under there and they were pulling, when the force was pulling on the boom lever in pulling the track crossing out, that the chain slipped along the hook, that is, the hook slipped along to one side of the crossing, and that caused it, when it pulled loose, to slough; I mean by that it swung over the edge of the car like that; it didn't come up to the center underneath the pulley. If this hook had been held stationary in the middle of that chain across it, it would not have swung that way; if they had used the bar we were using in the car it never would. A person could prevent that swinging when it was fastened in the manner in which we were using it by putting something on each side of the hook in the center of the chain, and it never would swing."

The question to be determined is not without some difficulty in view of the apparent confusion in the authorities; but we cannot concur in the contention of defendant in error that at the time of his injury Glover and his colaborers were not engaged in the operation of a car within the meaning of the statute. Freeman v. Shaw, 126 S. W. 53 (writ of error refused), Ry. Co. v. Thornton, 46 Tex. Civ. App. 649, 103 S. W. 437, Ry. Co. v. Pelfrey, 35 Tex. Civ. App. 501, 80 S. W. 1036, Ry. Co. v. Webb, 31 Tex. Cr. App. 498, 72 S. W. 1044, Mounce v. Lodwick Lbr. Co., 91 S. W. 240, Ry. Co. v. Walton, 47 Tex. Civ. App. 43, 104 S. W. 415 (writ of error refused), and Ry. Co. v. Johnson, 55 Tex. Civ. App. 495, 118 S. W. 1117, cited by plaintiff in error do not seem to be wholly in harmony with Ry. Co. v. Anderson, 102 Tex. 402, 118 S. W. 127, Ry. Co. v. Howard, 97 Tex. 513, 80 S. W. 229, Hampton v. Woolsey, 139 S. W. 889, Ry. Co. v. McGee, 141 S. W. 1054, Lakey v. Ry. Co., 33 Tex. Civ. App. 44, 75 S. W. 566, and Lawrence v. Ry. Co., 25 Tex. Civ. App. 293, 61 S. W. 342, cited by defendant in error, and in some respects it would seem that the two lines of cases are irreconcilable. It is true that Ry. Co. v. Webb, supra, was in effect overruled by Ry. Co. v. Anderson, supra, but such action does not necessarily carry with it a disapproval of all of the views expressed in the Webb Case. The latest expression of the courts upon the subject is found in Freeman v. Shaw, supra, in which a writ of error was refused, and this latter case quoted with approval the holding in the Webb Case that the term "operation" as used in the statute "evidently comprehends something more than the mere running of cars, locomotives, and trains of a railway company." This seems to us to be a correct view of the statute, and that there is nothing in the line of cases last cited, warranting the assumption that the Supreme Court has adopted the narrow and restricted view that the term "operation" is limited to the running or propelling of cars, locomotives, and trains from one point to another. We see no reason why the statute does

not apply to the stationary "operation" of a car such as was being here operated, and a contrary holding would be in the face of the statute. The wrecker, as stated, was operated by machinery, and the attached car containing the crossings was being unloaded. The machinery of the wrecker and the labor of Glover and his fellow servants were being jointly employed in the work of unloading the coal car containing the crossings. They were all engaged in the common task of unloading the crossings from the coal car, and in performing this service they were operating the wrecker; McGuire was manipulating the engine and derrick; McGowan, Mims, and Edwards were fixing the chains on the crossings, and hooking same to derrick; Glover was engaged in locating the particular crossings to be next hoisted and unloaded. It would scarcely be contended that McGuire, who operated the engine and derrick of wrecker, was not engaged in the operation of a car within the meaning of the statute, and yet Glover and his colaborers were co-operating with him in the operation thereof by performing service necessarily incident to the operation of the wrecker and derrick and the unloading of the crossings.

As was noted by Judge Levy in Freeman v. Shaw, supra, the meaning of the statute is not involved in obscurity or doubt, but the difficulty lies in determining its applicability to given facts. No general rule can be formulated by which its applicability in all instances can be determined, and ordinarily each case must be tested by its own facts. In the instant case this court is of the opinion that, under the facts stated and evidence quoted, Glover was protected against the negligence of his fellow servants under the statute mentioned, being at the time engaged in the "operation" of a car within the meaning of the statute. The eleventh assignment is therefore sustained.

The charge is not subject to the objections urged in the twelfth and thirteenth assignments.

[13-15] That portion of the charge quoted in the fourteenth assignment does not seem to have been raised by the evidence, and should not have been given, but of itself this furnishes no ground for reversal; the apparent error being harmless.

The error first complained of in the court's charge in assignments 15, 16, and 17 was invited by plaintiff in a charge requested by him, and he is estopped to complain thereof. As to the second objection, the charge taken as a whole is not subject thereto.

[16] The eighteenth, twenty-fourth, and twenty-fifth assignments are grouped. They are not germane, and are improperly grouped, for which reason they will not be considered.

Assignment 31 is submitted as a proposition. It will not be considered, for as such it is multifarious. As to the subjoined prop-

osition, it is so vague and indefinite that we do not grasp its meaning, and are unable to pass on it.

The point made by the twenty-ninth assignment is without merit.

The nineteenth and twentieth assignments are grouped. They are not considered because: (a) They are not germane and are improperly grouped; (b) they are submitted as propositions, and as such are multifarious, vague, and indefinite.

In the twenty-third assignment complaint is again made of the failure of the court in its charge upon assumed risk to apply the qualifications of article 6645, R. S. Plaintiff in error seems to have had a desire to present this question by as many assignments as possible. We again hold that the assignment is not well taken; the error having been invited.

Assignments 22, 27, and 28 are grouped. They are not germane, and will not be considered. In passing, however, it may be said that the question presented by the twenty-seventh and twenty-eighth assignments is passed upon by what is said in disposing of the eleventh.

The twenty-first assignment and subjoined proposition are wholly without merit.

[17] The twenty-sixth assignment complains of the action of the court in limiting plaintiff in error's counsel in his argument to 1 hour and 15 minutes time. No reason is apparent why this was not more than sufficient time, and there is nothing to indicate that the limitation upon the flow of oratory was harmful. The assignment must therefore be overruled.

The thirty-second and thirty-fourth assignments relate to the evidence. In view of a reversal upon other grounds, comment thereon would be improper.

Reversed and remanded.

On Rehearing.

Defendant in error, in its motion for rehearing, urges that the eleventh assignment should not have been sustained because there is no allegation of negligence on the part of any of Glover's coworkers other than the foreman, Phillips. The language of the petition is not as clear and satisfactory as it should be in respect to this matter, but is regarded as sufficient to raise the issue. This and the other contentions assumed in the motion for rehearing being regarded as without merit, the motion is overruled.

[18] The plaintiff in error, in a reply filed to the motion for rehearing, states that after briefing the case and after its submission, he noticed he had failed to call this court's attention to the fact that the provisions of the Employers' Liability Act, article 6648, Rev. Stat. of 1911, is applicable, rather than article 6640, since the accident to plaintiff occurred on April 21, 1910. As stated in the opinion, we purposely pretermitted any discussion of liability for the negligence of fellow servants upon a phase of the case readily apparent but not raised, for the reason that plaintiff in error's assignment and supporting propositions were predicated solely upon the applicability of article 6640, and under the authorities cited in the opinion, we were confined in our consideration of the assignment to that position. As was intimated in the opinion, the applicability of article 6648, rather than article 6640, was readily apparent, but it is not within the province of this court to reverse cases for errors not assigned and not presented, unless they be fundamental in their nature, or of such character otherwise that same should be passed upon without assignments.

We, therefore, expressly decline to sustain the assignment by reason of the provisions of article 6648, and base the reversal upon the ground assumed originally that, disregarding said article, the defendant in error nevertheless is liable under the provisions of article 6640.